## Sprague *vs.* Blake.

Where a contract is made for the sale of an article of merchandize at a stipulated price, although the contract be void under the statute of frauds, the *price* agreed upon may be recovered, if the article be subsequently delivered and *accepted*.

A *subsequent* acceptance in whole or in part of the article agreed to be sold, renders the contract valid; though it *seems* it is not so as to the payment of earnest money.

Although by the terms of a contract an article agreed to be delivered is to be of a *merchantable quality*, still if an inferior article be delivered and *accepted*, the purchaser when called upon for payment is not entitled to a reduction from the contract price, on the ground of the inferior quality of the article; he *must* refuse to accept it, or if its inferiority be subsequently discovered, he must return it or require the purchaser to take it back.

ERROR from the Yates common pleas. Blake sued Sprague in a justice's court, and declared in *assumpsit* for wheat sold and delivered. The defendant pleaded the general issue and gave notice of set-off, and claimed damages for non-performance of the contract by the plaintiff. The plaintiff obtained a verdict in the justice's court, and the defendant appealed to the Yates common pleas. On the trial in that court, the following facts appeared. In the summer of 1835, the defendant agreed to purchase the whole of a crop of wheat belonging to the plaintiff,

estimated to amount to between three and four hundred bushels, to be delivered at a particular place on the Seneca Lake, for which the plaintiff agreed to pay one dollar per bushel. A portion of the wheat had been threshed at the time of the bargain, was lying on the plaintiff's barn floor, and was examined by the defendant. It was agreed by the defendant that the wheat should be merchantable. Subsequently *a part* of the wheat was delivered at the place specified, *was received by the defendant* and paid for by him, and it was agreed between the parties that the *residue* of the crop should be delivered at the storehouse of one *James D. Morgan*, in Penn-Yan. In pursuance of this last arrangement the plaintiff delivered at the storehouse of Morgan 27 bushels and 48 lbs. of wheat, and for the delivery of this parcel the action was brought, the defendant refusing to pay for the same. *Morgan* was the *agent* of the defendant in receiving wheat in the summer of 1835. He was not present when the last quantity was delivered; it was received by his servants. On opening the first bags, one of them told the plaintiff the wheat was *bad*, and it would not do to empty it in with the rest in the storehouse; to which the plaintiff replied that they had seen his wheat and had bought his whole crop. The wheat was then emptied into a bin containing six or seven hundred bushels. The whole load was a mixture of broken wheat, black kernels, cockle and chess. The defendant offered to prove the *value* of the wheat delivered; this evidence being objected to by the plaintiff, the court decided that it was inadmissible under the *notice* given with the plea, and that no proof as to the value of the wheat could be received, except such as showed or tended to show that it was of no value whatever. A witness then testified that the wheat might be worth 33 cents per bushel. The defendant offered to prove that the wheat in the bin was rendered unsaleable by the quantity in question being mixed with it; this evidence was rejected by the court. It was proved that the wheat in question, together with other wheat, was taken away from Morgan's storehouse by the defendant's boatmen. A witness for the defendant testified that when

the contract for the purchase of the plaintiff's crop was made, there was no note or memorandum in writing made of the bargain, nor was any portion of the wheat then delivered, nor was any money paid. The counsel for the defendant contended that the contract was void under the statute of frauds, and on this ground again offered to prove the *value* of the wheat, but the court refused to receive the evidence. The court charged the jury that if they were satisfied that the wheat was received by the defendant or his agent, they would find for the full contract price. The jury accordingly found a verdict for $30.90. The defendant having excepted to various decisions made by the court, sued out a writ of error.

*J. S. Glover*, for the plaintiff in error.

*E. Van Buren*, for the defendant in error.

*By the Court*, COWEN, J. The court below were right upon the evidence in charging the jury, that if the wheat was accepted by the defendant or his agent, they must find for the plaintiff the whole contract price. This was the only question that was at all open for the jury. If there had been no acceptance no action would lie. If there was an acceptance, it was obviously connected with the special agreement, which fixed a price. It is said that was void by the statute of frauds. Be it so at the time; still it was good as a proposition of price, under which the plaintiff avowedly acted, and which the defendant did not revoke. He too, therefore, must be taken to have acted under it in receiving the wheat, unless the law would allow him to mislead the plaintiff by his silence. On a delivery, without any change of terms, even of part, a previous proposition to pay a certain price becomes binding. The part delivery need not by the statute, be made at the time of the contract. An oral agreement may stand for a mutually agreed proposition, and unless revoked, the subsequent acceptance of part of the goods which were the subject of the oral negotiation, will make it binding. The statute does not require that the part acceptance should be

*at the time* of the oral contract, though it seems to be otherwise · of earnest money which is to bind the bargain. 2 *R. S.* 70, § 3. The authorities upon the statute of frauds allow of an oral order at one day ; and an acceptance at another by the defendant or his agent. That completes the contract. *Hart* v. *Sattley*, 3 *Campb.* 528. *Vincent* v. *Germond*, 11 *Johns. R.* 283. The latter case went much upon *Chaplin* v. *Rogers*, 1 *East*, 192, which the court below seem to have followed in their charge. The case before them was much stronger for the plaintiff than *Chaplin* v. *Rogers*. The cases of *Jennings* v. *Webster*, 7 *Cowen*, 256, 262, 263, *and Outwater* v. *Dodge*, 6 *Wendell*, 397, 400, are also authorities, that a subsequent acceptance in whole or in part, under an oral contract, makes it good. These authorities cover the whole ground in question, unless indeed, there was a warranty or some fraud in the defendant. There being an acceptance, as the jury have found, and that being plainly at the agreed price, the question of recoupment for the inferior quality of the goods sold, becomes the same as if the action were brought by the defendant to recover damages. Fraud was not pretended ; and the doctrine of warranty on the sale of goods has been lately so much canvassed by this court and the court of errors, in *Hart* v. *Wright*, 17 *Wendell*, 267, that there is no need of going much into the enquiry in the case at bar, whether there was a warranty express or implied. The court below gave the defendant the full benefit of the doctrine as it was understood by *Hart* v. *Wright*, if not more. There was here certainly no implied warranty ; and we clearly think no express warranty. It is true that the wheat was by the terms of the agreement, to be merchantable. That is understood of every such contract, even without express terms, while it is executory. When the party comes under such a contract to deliver an inferior unmerchantable commodity, which lies open to inspection, then is the time for the vendee to take his ground. He must then refuse acceptance, or at least, so soon as he discovers what the quality of the article is ; and offer to return it. When it is fully accepted, a new rule of construction arises. The executory contract is performed, no

action lies upon that; and no defence, therefore, can be based upon it; but either must go upon an actual sale and delivery. The declaration on one hand, or notice of defence on the other, can no longer aver a contract *to deliver* a merchantable article, which had not been done; but only that the vendor *had delivered*, and upon that delivery had agreed that it was merchantable. The acceptance is an assent that the terms of the executory contract were fulfilled. This distinction was also much considered in *Hart* v. *Wright*. *Vide* 17 *Wendell*, 277. It reconciles many cases which would otherwise appear to conflict.

It is said that in this case, the plaintiff's wheat was emptied into a large bin of better quality; and the defendant could not, therefore, return it; and damages are claimed for the manner of delivery. The plaintiff delivered the wheat at the place designated. It was opened and inspected by the receiver, who did object to its being mixed with the other wheat. Why did he not refuse absolutely to receive it, or direct it to be placed by itself, declining an absolute unqualified acceptance? The plaintiff answered, "the defendant has agreed for all my wheat." It was mixed with the other, by the defendant's agent, and he afterwards boats it away. It cannot be insisted, after what the jury have found, that it was not accepted by the defendant's agent, and accepted generally. The defendant adopted all that the receiver had done. He takes and converts the plaintiff's whole crop, pays him for the main bulk; but absolutely declines paying for a small portion received under the same contract at the same price with the other. We entirely approve of what Lord Ellenborough, Ch. J. said in *Fisher* v. *Samuda*, 1 *Campb.* 190, 193. There the defendants had ordered beer from the plaintiff, for the purpose of its being shipped to Gibralter. On the arrival of the beer, it was discovered to be unfit; but kept some time before there was any offer to return it. In an action by the vendee upon the executory contract *to deliver* beer fit to be shipped, and a breach in not delivering such beer, Lord Ellenborough said, "It was the duty of the purchaser of any commodity, immediately upon discovering that it was not according to order, and unfit for

the purpose for which it was intended, to return it to the vendor, or to give him notice to take it back. Here, according to the plaintiff's own case, he knew certainly in *July* that the beer was unfit to be sent to Gibralter, and there is no evidence of his having intimated this to the defendants before *December*, when the season for their exporting it was over, and when they might have lost the opportunity of disposing of it at home. Under these circumstances, the plaintiff must be presumed to have assented to its being of a good quality, and to have acquiesced in the due performance of the contract on the part of the defendants." In the case at bar, there was much more ; an acceptance and conversion.

The merits being still with the plaintiff, admitting that all had been proved which the defendant below offered, it is not necessary to inquire into the other questions which arose at the trial. As to damage for any wrong done by putting the wheat in the bin with that of a better quality, and thus injuring the plaintiff, such special damages clearly could not have been set off. They were not covered by the notice of set-off, and, indeed, the defendant's agents are rather the cause of the mischief themselves, in not directing another place for the wheat in question. This is said to have been done without the consent of the defendant. Not so. If the receivers were not his agents, why did he adopt their acts ? Campbell was his actual agent. He, too, inspected the wheat in the bin ; and the defendant's boatmen afterwards took it away. Davis, who was a sub-agent of the defendant, was present and actually participated in the delivery, without, as he says, inspecting the wheat particularly, though his attention must have been called to its inferior quality. He controlled the place of delivery.

The exceptions were not well taken, and the judgment must be affirmed.