Dauchy agt. Tyler.

---

# SUPREME COURT.

## PHILO DAUCHY and SAMUEL W. DAUCHY agt. OSCAR TYLER.

This case is reported for the sole purpose of exhibiting the views of the judge on the subject of allowing *amendments of pleadings on the trial;* and to apprize attorneys that they must not go to circuits (where the judge presides) expecting to succeed in their causes upon errors in the pleadings of adverse parties, unless such errors are fatal to the action or defence.

On the *third trial* of this case, the judge allowed the plaintiffs to amend their complaint without costs, or on any terms, so as to conform it to the facts proved.

The plaintiffs' claim for which the action was brought, was for the sum of $400, alleged to have been advanced and paid to the defendant on a contract made

with the defendant for the purchase of lumber; and alleging a breach of the contract on the part of the defendant, to sell and deliver the lumber as agreed. The amendment of the complaint was allowed, so that it would show that the alleged payment of $400, was made towards the lumber *at the time* of making the contract; and also, so it would contain an averment of an excuse for plaintiff's not offering to receive the lumber, and pay the unpaid portion of the price thereof, at the place, &c., at the time, &c.

*Chemung Circuit, February,* 1858.

THIS action was tried for the third time at the Chemung circuit, held by Justice BALCOM, in February, 1858.

The complaint in the action was as follows :

" The plaintiffs in this action, complaining, aver that about the first day of September, 1851, they entered into an agreement with defendant, whereby defendant, in consideration of plaintiffs' promise, hereinafter mentioned, promised to sell and deliver to plaintiffs at Corning, in the county of· Steuben, in the course of the fall of 1851, from ten to fifteen thousand fence ribs or rails, two inches by three inches, and sixteen feet long ; and in consideration of such promise, plaintiffs promised to pay defendant for said fence ribs, at the rate of ten dollars per thousand feet, board or inch measure, for the quantity which defendant should deliver in pursuance of said agreement ; and *thereafter*, on the 29th day of September aforesaid, plaintiffs advanced and paid to defendant on said agreement for the ribs to be delivered as aforesaid, four hundred dollars, *and have at all times been ready to perform said agreement on their part*, but defendant has not sold or delivered to plaintiffs any fence ribs, as he agreed to as aforesaid, or in any wise ; nor has he repaid plaintiffs the four hundred dollars advanced as aforesaid, or any part thereof, although often requested to do so. ' And plaintiffs aver that such fence ribs, at the time they were agreed to be delivered as aforesaid, were, and ever since have been worth, at Corning aforesaid, the price agreed to be paid therefor, as aforesaid. Wherefore, plaintiffs demand ·judgment against defendant for four hundred dollars with interest thereon, from the 29th day of September, 1851, and costs of this action."

The answer consisted of denials of the several allegations

of the complaint. The plaintiffs obtained a verdict for $400, and interest thereon, on each of the first two trials; but they were set aside for erroneous rulings of the judges who presided thereon. And one of the grounds on which the second verdict was set aside, was, that the plaintiffs had not shown an offer of complete performance of the agreement on their part, by being ready to receive the lumber, at Corning in the fall of 1851, and pay the unpaid portion of the price agreed to be paid therefor.

On the last trial, at the February circuit, 1858, the plaintiffs appeared by S. G. HATHAWAY, JR., their counsel, and the defendant appeared by SMITH & MURDOCK, his counsel.

BALCOM, Justice. After the plaintiffs' counsel had opened the cause to the jury, and before any evidence was given, the defendant's counsel moved for a nonsuit, on the ground that the complaint did not state facts sufficient to constitute a cause of action, inasmuch as it did not show that the alleged contract for the lumber, was in writing; or that any part of the lumber had been accepted and received by the plaintiffs; or that the plaintiffs paid the $400 on the contract, *at the time it was made;* but that the complaint expressly showed that the $400 was paid subsequent to the time of making the contract; and that such subsequent payment did not relate back and make the contract valid. Defendant's counsel cited on this point, 2 *R. S.* 136, § 3; *Sprague* agt. *Blake*, (20 *Wendell*, 61.) The judge remarked that he would hear the plaintiffs' evidence, and if the same should establish a cause of action, the complaint might be amended, if he should come to the conclusion that it was defective, in the particulars specified by the defendant's counsel. He thought sections 169, 173, 174 and 176 of the Code, authorized such a course; and thereupon denied the defendant's motion for a nonsuit; to which ruling the defendant's counsel excepted.

The plaintiffs offered to prove, as an excuse for not offering to receive the fence ribs, and pay the unpaid portion of the purchase price of the same in the fall of 1851; that about the

Dauchy agt. Tyler.

20th of October, in that year, the defendant's agent called on the plaintiffs' agent, and informed the latter, that the defendant would not be able to deliver the fence ribs, pursuant to the contract therefor, because they had been attached on process, issued in Pennsylvania, from whence the defendant had designed to ship them by the Blossburgh Railroad, to Corning, N. Y. The defendant's counsel objected to the evidence offered, as immaterial; and on the ground that the complaint contained an averment of performance of the contract by the plaintiffs, and none of any excuse for their non-performance of it. But the judge overruled the objection, and permitted the plaintiffs to give the evidence, (the defendant's counsel excepting to the ruling;) the judge saying he thought justice required him to hear the evidence, and ascertain if the plaintiffs had a legal cause of action, arising on the alleged contract for the lumber; and if they had, the complaint could probably be amended, so as to embrace it. But, without saying precisely what he would do, when the evidence should be all out, he would allow the plaintiffs to make the proof they had offered, and go through with the case on their part. The plaintiffs then gave the evidence they had offered, and also all they had, to establish their right to recover on the contract, and rested their case. The defendant's counsel thereupon asked the court to nonsuit the plaintiffs, on the following grounds, among others, to wit: that the contract as set out in the complaint, was void by statute, for the reasons hereinbefore stated; that no recovery could be had upon the contract; nor could the money, alleged to have been advanced on it, be recovered under the complaint; for the variance between it and the proofs, and the want of necessary averments in it. That the proofs did not show an offer of complete performance of the contract, on the part of the plaintiffs; nor a readiness or ability to perform it, in the fall of 1851. The defendant's counsel strenuously objected to any amendment of the complaint by the plaintiffs; and especially as the action had been twice tried on the complaint, as it then stood; and contended the defendant would be greatly prejudiced, if the

plaintiffs were permitted to amend the complaint. But the judge allowed the plaintiffs to amend the complaint, without imposing any terms on them whatever, so as it would show that the alleged payment of $400, was made. towards the lumber *at the time* of making the contract; and also, so it would contain an averment of the alleged excuse, for the plaintiffs' not offering to receive the lumber, and pay the unpaid portion of the price thereof, at Corning, in the fall of 1851, (the defendant's counsel excepting to such ruling.) But the judge nonsuited the plaintiffs, on other grounds, which it is not necessary to mention; to which decision the plaintiffs' counsel excepted; and for which ruling they will move for a new trial, at the general term.

This case is now reported, for the sole purpose of exhibiting the views of the judge on the subject of allowing amendments of pleadings on the trial; and so attorneys will not go to circuits, expecting to succeed in their causes, upon errors in the pleadings of adverse parties, unless such errors are fatal to the action or defence.

And on this subject, Justice BALCOM said: he did not intend a plaintiff should ever lose his case, where he presided on the trial, by reason of any mistakes made by his attorney, in setting out the cause of action in the complaint; and that he thought a defendant should never be deprived of a defence, in consequence of any errors of his attorney in preparing the answer. He had never turned a plaintiff out of court, who had a good cause of action, for any error or defect in the complaint, or on the ground that there was a variance between it and the case made by the evidence; nor had he ever excluded a defence, proved or offered to be proved, by reason of any error or defect in the answer, or because the defence proved, varied from that contained in the answer, but had, invariably, allowed the pleadings to be amended on the trial, and conformed them to the cause of action or defence, as the same was found to exist. This course, he said, was enjoined upon the court by the Code. (*See* §§ 169, 170, 173, 174 *and* 176.)

Dauchy agt. Tyler.

He said: the old system of pleadings and practice was abolished, because parties were often beaten at the circuit, in actions, solely for errors committed by their attorneys, in preparing the pleadings; and the Code was substituted in its stead, so that the *real* controversies between parties to actions, should be tried on their merits at the circuit, whether the pleadings were in proper shape or not, respecting the matters in dispute.

He also said, the meaning of the Code, as he understood it, was, that the pleadings in actions should be amended in all cases, at the trial, so as to make them state and embrace, in legal language, the matter in dispute, unless the amendment substantially changed the *claim* or *defence*. (*See Code*, § 173.) That the plaintiffs' *claim* in this case, was the $400, aside from interest, which they alleged they paid to the defendant, on the contract for the lumber; and not whether the plaintiffs or defendants had done this or that, under the contract, to entitle them to the $400, and interest thereon. And he thought the plaintiffs' claim in this action, would not be substantially changed, by conforming the complaint to the facts proved, where the former varied from the proof; and would, therefore, permit the plaintiffs to amend the complaint, so as to conform it to the facts proved.

He said he would also remark further, that he had very seldom found it necessary to impose any terms, on allowing pleadings to be amended; and he never did so where a party came to court *prepared* to be surprised or misled, if the pleadings of his adversary should be amended, by leaving a witness or paper at home for such a purpose. He added that, when parties have a matter in difference they *know* exactly what it is, and should fully and fairly state it to their attorneys, and come to court *prepared to meet the case as it actually existed*, without taking fine sight at the pleadings, to see if justice could not be cheated out of her dues, by some objection based upon them. The sooner parties and their attorneys learn that they must come to the circuit fully prepared to meet the case to be tried, *as it has really occurred*, and not

Dauchy agt. Tyler.

to meet it *solely* as some inexperienced lawyer has stated it in the pleadings, the better it will be for them where he (Judge B.) presided; for they would very seldom be able to make a case which would induce him to postpone the trial, or require any costs to be paid, as a condition for allowing a party to amend his pleading.

He also remarked that he had no fears that the liberality with which he allowed parties to amend their *pleadings, on the trial,* would tend to make attorneys more careless than they now are in preparing them; for the reason that the remedies by demurrer and special motion to test and correct pleadings, may be resorted to, prior to the trial, which would always induce attorneys to be accurate in framing the pleadings.

The judge concluded by saying, he had not made all these observations, because they were applicable to the case on trial, but for the reason that he desired attorneys to understand, that they need not come to circuits where he presided, with the illusory hope of succeeding in actions, on errors in the pleadings of their adversaries; but must come prepared to try their cases on the merits, as their clients knew them to be, whether the pleadings fully or correctly presented the matters really in dispute or not; for he should always permit parties (unless a different rule should be established by the general term, or court of appeals) to amend their pleadings, in almost any manner in furtherance of justice; and generally without any postponement of the trial, or imposing any costs on the parties making the amendments.

NOTE. The views expressed in this opinion suggest a reference to the liberal provisions and policy of the Code alluded to by Judge GOULD, in the opinion in the case of *Doedt* agt. *Wiswall,* (*ante, page* 128,) where he says, (speaking of the allegations of the cause of action in the complaint,) " their lack of clearness and precision is carried to the very limit of what is sometimes said to be the effect, (as well as the intention) of the Code, viz: that parties come into court and tell their own story, and the court is to apply the proper relief."

It is not difficult to imagine a scene of ordinary skirmishing by experienced counsel, on a trial at the circuit, on the application of these liberal principles of pleading and amendment. The plaintiff's counsel proceeds with his evidence, on the trial, in the usual manner, until he has discovered that it bears very

Dauchy agt. Tyler.

strongly in a direction not anticipated, and that the facts necessary to be proved to sustain his action are quite different from those alleged in the complaint. He, however, calls a witness to prove his new state of facts; upon which, the defendant's counsel very peremptorily objects, as being entirely inapplicable to the case made by the complaint. The plaintiff's counsel thereupon applies to the judge for an amendment of his complaint, so as to embrace the proposed evidence. The judge, on reflection, says, yes, I will allow you to amend; I don't think the amendment will change substantially, the cause of action. But, says the defendant's counsel : your honor, this is an entire new case which the counsel now proposes to establish by this evidence; we have had no notice of it, and if this amendment is to be allowed, I should desire a little time to make preparation to argue the question; it is a complete *surprise* upon us. Well, says the judge, surprise parties are common in these days, and besides, under the liberal policy of pleading and amendment allowed by the Code, we must not be surprised at anything in the way of amendments under it.

The defendant's counsel, with energy exclaims, (and it may be with unbecoming deference,) that if this is the practical application to be given to this liberal system, he should consider the whole system and policy, as containing no true liberality, but afflicted with a most terrible *looseness*, revolting to a mind containing the least particle of regard for the true principles and structure of pleading and practice, so essential to the appropriate government of parties in enforcing and defending their legal and equitable rights. The judge (with a humorous pacification playing on his countenance) remarks, why, my dear sir, you ought not to complain of a system of pleading which shifts the *onus*, and throws it upon the judge *at the trial* to settle the pleadings in a cause, instead of having them prepared, and properly adapted to the proof in the case, by the counsel, before the trial begins. It may be your turn next to ask similar assistance at the hands of the court.

Thank your honor, says the defendant's counsel, I have no doubt that if placed in such a dilemma, I should be exceedingly well pleased to avail myself of your honor's superior wisdom and skill as a pleader; but in this case, I think the *answer* is drawn so as to stand fire, unless your honor permits the plaintiff to go off half cocked, once or twice more; in such an event I would not vouch for the ability of your honor, even, to adapt the answer to such a thatched complaint as would necessarily then appear. But if successful in that, I would venture to predict that after a period of six weeks, neither your honor, nor any other good lawyer, (saying nothing of a "common understanding,") on examination of the *judgment roll* on file, would "know what was intended."—[REPORTER.