## FITCH *vs.* CARPENTER and others.

Contracts were entered into between the plaintiff and defendants, dated respectively October 17, and October 26, 1861, by the first of which the plaintiff agreed to deliver to the defendants 1000 tons of hay at $10 per ton, and by the second he agreed to deliver from 300 to 500 tons at $11 per ton. The hay was to be delivered at Albany, and to be good, merchantable, shipping hay, in good order, in bales averaging 300 pounds. Hay was delivered to, and accepted, by the defendants' agent at Albany upon these contracts. The defendants insisted that a considerable portion of the hay so delivered was not of the quality provided for by the contracts. *Held* that the question as to what was included or excluded from the terms employed in the contracts was open to evidence for the purpose of showing what was intended by the use of the terms employed.

*Held,* also, that there being a question of fact involved, whether the hay delivered was of the quality which the contracts called for, in regard to which there was a conflict in the evidence, and which question had been decided by the referee, his decision was final.

*Held,* further, that the plaintiff having delivered the hay, at Albany, accord-

Fitch *v.* Carpenter.

ing to the conditions of the contracts, and the defendants having accepted it with a knowledge of a deficiency in the weight of the bales, and without objection, at the time, they had waived a right to urge that the hay did not conform to the contracts, and to claim a deduction from the price on that account.

And that it was competent to show that the defendants had waived the provision in the contracts, requiring the bales to average 300 pounds each.

THIS was an appeal by the defendants from a judgment entered upon the report of a referee in favor of the plaintiff, for the sum of $2052.28. The action was brought to recover the balance due for a quantity of hay sold and delivered by the plaintiff to the defendants. The first contract was dated October 17, 1861, and was for the delivery of 1000 tons, at $10 per ton. The second contract was dated October 26, 1861, and was for the delivery of from three hundred to five hundred tons, at $11 per ton. The hay was to be delivered at Albany, and to be good, merchantable shipping hay, in good order, in bales averaging 300 pounds. The cause was referred to Albert S. Robinson, Esq. and was tried before him. The referee found that the hay was delivered and received according to the contracts, and reported in favor of the plaintiff. The defendants claimed that the hay delivered was of an inferior quality, and the bales did not average 300 pounds. The defendants introduced several witnesses to show that the terms "good, merchantable shipping hay" had a definite meaning and excluded clover hay; and that a considerable portion of the hay had clover mixed up with it; that they notified the plaintiff that the hay was not according to contract, and that they had rejected it at New York, and had it stored on the plaintiff's account. Also evidence to show that that plaintiff had promised to make deductions, which was denied and contradicted.

The plaintiff introduced evidence to show that the hay had been accepted by the defendants' agents at Albany, and was not rejected for its alleged defective quality, or because of the weight of the bales being less than was provided for. He also proved that the defendants had consented to waive

the defect in weight, and that at the time of making the contracts, mixed hay and clover were mentioned as coming within the contracts. The evidence was conflicting upon all the questions of fact. The questions raised are presented in the opinion of the court. Upon judgment being entered, the defendants appealed to the general term. · The case was submitted on written points.

*Bromley & Bovee,* for the appellants.

*J. H. Reynolds,* for the respondent.

*By the Court,* MILLER, J. In this case the referee has found that, in pursuance of the two contracts introduced in evidence upon the trial, the plaintiff sold and delivered to the defendants, and the defendants received under the contracts, 1000 tons of hay at $10 a ton, and 238 tons at $11 per ton, and rendered a judgment in accordance with this finding, in favor of the plaintiff.

It is insisted by the defendants' counsel that a considerable portion of the hay sent to New York was not of the quality provided for by the contracts, and was not "good, merchantable shipping hay," within the meaning of that phraseology. Several witnesses were introduced by the defendants to prove that this expression included timothy and red top, only, and excluded clover; and that the plaintiff was not entitled to recover contract prices, which the referee allowed for such hay.

The question as to what was included or excluded from the terms employed in the contracts, was, on the trial, open to evidence for the purpose of showing what was intended by the use of the words employed. It appeared that at the time the contracts were made, clover was mentioned as among those kinds of hay answering the description of good, merchantable shipping hay. The plaintiff claimed, and his evidence tended to show, that the hay delivered and received was substantially of the quality which the contracts called

for. Although the evidence of the defendants was directly to the contrary, yet it is somewhat apparent that there was a question of fact involved in regard to which there was a conflict in the evidence, and which having been decided by the referee, his decision is final.

This view of the question disposes of the main point raised by the defendants; but even if upon that point there is still room for doubt or discussion, I am inclined to think that the plaintiff having delivered the hay at Albany, according to the conditions of the contracts, as the referee has found, and the defendants having accepted it with a knowledge of the deficiency and without objection, at the time, they have waived a right to urge that the hay did not conform to the contract, and to claim a deduction from the price on that account. (*Pars. on Cont.* 326, 327. *Sprague* v. *Blake,* 20 *Wend.* 61. *Hart* v. *Wright,* 17 *id.* 277.)

The hay was to be delivered at Albany, and was there delivered, as is conceded, to the agents of the defendants. There is some evidence to show their acceptance of it, thereby assenting to the fact that the terms of the contracts, on the part of the plaintiff, had been carried out and fulfilled, and that the defendants were satisfied. The referee has found against the defendants on this point, and there is certainly no such preponderance of evidence in their favor as would justify an interference with his decision for that reason.

It is no answer to say that the hay was rejected on its arrival in New York, and stored for the plaintiff. The finding of the referee settles the question the other way; and it was too late afterwards to claim that it did not answer the contracts.

It is said that the referee manifestly erred in receiving evidence to vary the written contract, as to the weight of the bales and as to the quality of the hay. I think no improper evidence was received as to the quality of the hay, and that it was competent to show that the defendants waived the

provision in the contract requiring the bales to average 300 pounds each. If they chose to accept bales of a lighter or different weight than was provided for, it was proper testimony to submit to the referee upon the question whether this provision of the contracts had been waived.

The whole matter involved in this case was mainly a question of fact, in regard to which there was a dispute, and the evidence was certainly conflicting. There was no error committed on the trial, and the judgment entered on the referee's report should be affirmed with costs.

[ALBANY GENERAL TERM, March 7, 1864. *Peckham, Miller* and *Ingalls,* Justices.] ·