GAULT, BROWN & CO. *v.* GEO. W. BROWN & AL.

A contract for the sale of seven hundred cords of wood upon a certain lot of land at five dollars per cord, made on the first day of January, the vendor to deliver as much thereof as he could that winter, and the balance thereof during the next following winter and year, the buyer to pay for what was delivered at the close of each winter's delivery, is an entire contract of sale of the whole quantity ; and a delivery and acceptance of a part the first winter will take the case out of the statute of frauds.

And it was held, also, that this was not a contract which was not to be performed in one year, within the meaning of that statute.

ASSUMPSIT. The declaration contains the general counts for goods, wares and merchandise, bargained and sold, sold and delivered, &c., and a count upon an account annexed to the writ charging the defendants, under date of June 7, 1866, with 735 5-8 cords of wood, at $5 per cord,                                                                                     $3,678 13
Cash paid surveyor,                                                                         4 00
Cash paid for use of land,                                                              25 00

                                                                                                    $3,707 13

—allowing sundry credits, and leaving a balance claimed to be due the plaintiffs, amounting to $1,833 38.

There are also two counts charging the defendants with the breach of a special contract in substance as follows : The first count alleges that the plaintiffs, on the first day of January, 1865, bargained and sold to the defendants "all the wood that was then cut and being upon a certain lot of land, containing some over 700 cords, by estimation," at $5 per cord, "to be delivered on a certain lot of land" described in the declaration "as much thereof as said plaintiffs could thus deliver during the then present winter, and the balance thereof during the next following winter, and year," alleging that the defendants agreed to accept the same when delivered as aforesaid, and to pay for the same as follows : As often as the plaintiffs should deliver 100 cords, defendants should pay them money enough to pay for the drawing of the same, "and when the plaintiffs should deliver as aforesaid as much of said wood as they could during the then present winter the defendants should pay them the balance due therefor on demand, and when the plaintiffs should deliver the whole of said wood as aforesaid, the defendants were to pay them the balance then due them therefor on demand."

The plaintiffs aver that on the first day of April, 1865, they delivered 374 3-4 cords of the wood aforesaid, "being all that they could thus deliver during the then present winter," and the defendants accepted the same and paid therefor according to their said promise. The plaintiffs then aver, they have always been ready to perform their agreement ; that they have delivered the balance of said wood, except twenty cords, which the plaintiffs, at the request of the defendants, sold, and on the 7th day of June, 1866, notified the defendants and requested them to accept and pay for the same, but the defendants refused to accept or pay for the same.

The second special count is substantially like the first, the plaintiffs

averring that immediately after making said agreement they commenced to deliver said wood and continued to deliver the same until they had delivered 374 3-4 cords, which the defendants then accepted and paid for; that after they had delivered nearly all of said 374 3-4 cords, the defendants requested them not to deliver any more that winter, but to deliver the balance the next winter, and promised to accept the same then, according to their aforesaid agreement; that thereupon the plaintiffs relaxed their efforts, which they were then making to deliver the wood according to their said promise, and finally desisted therefrom after delivering said 374 3-4 cords, being ready and willing, &c.; that at the commencement of the following winter they began to deliver the balance of the wood and continued the delivery thereof till the whole was delivered; that they requested the defendants to accept and pay for the same, but they refused. The declaration may be referred to at the hearing.

In the opening statement of the plaintiffs' counsel, he stated that in December, 1864, by a verbal bargain, the plaintiffs sold to the defendants the wood then cut and lying on a certain piece of land in Bow, amounting to something over 700 cords, to be delivered by the plaintiffs on land near the house of Jeremiah Noyes, in Concord, as much of it as they could that winter, and the residue in the winter after; that the defendants should take and pay for it at the rate of five dollars per cord, and when the plaintiffs had delivered as much as they could that winter, the defendants agreed to take what was delivered that winter, and pay for it on demand.

That during the winter of 1864–5, the plaintiffs, in accordance with the agreement, delivered 374 3-4 cords of wood, which the defendants accepted, and paid for according to the agreement. That when nearly all the 374 3-4 cords were delivered, the defendants requested the plaintiffs not to deliver any more that winter, but to deliver the balance the next winter, promising to accept thereof, according to their said agreement; that the plaintiffs thereupon relaxed their efforts to deliver the wood that winter, and desisted, after delivering the 374 3-4 cords; but were ready and willing, at all times, to deliver all the wood, according to their agreement.

During the winter and spring of 1865–6, the plaintiffs drew and deposited on the land aforesaid, near Noyes', the residue, being 260 7-8 cords, of the wood, and on the 7th of June, 1866, requested the plaintiffs to accept and pay for it, which they refused to do. It was also stated that after the original agreement for the sale of the wood was made, it was modified in some particulars, not material to this case, as is set forth in the declaration.

Upon the close of the plaintiffs' opening statement, the counsel of the defendants objected that, upon the facts thus stated, and on the declaration, the plaintiffs were not entitled to recover, because the agreement relied on was within the statute of frauds, so called. Whereupon the cause was taken from the jury, and the questions of law raised as aforesaid are reserved and transferred.

*Marshall & Chase*, for plaintiffs.

*Foster & Sanborn*, for defendants.

BELLOWS, J.   The defence set up is that the contract was within the statute of frauds, and therefore invalid, both because it was for the sale of goods of the value of $33 and upwards, and was not to be performed in one year.

In answer to the plaintiffs' position that here was an acceptance of part of the goods sold, the defendants reply that the case shows several and distinct contracts for the sale of the lots delivered the first and second winters; and that no part of the second winter's lot was accepted.

The contract, however, was for the sale of the entire lot of wood upon a certain lot of land, estimated to be rising 700 cords, to be delivered that winter by the plaintiffs, at another place, so far as they could, and the balance the next winter and year; and this, we think, must be regarded as one entire contract.   It was made all at one time, and embraced the entire quantity of wood, and the plaintiffs were bound to deliver it all that winter if they could, but if they could not, then to deliver it the next winter and year; the quantity delivered each winter to be paid for at the close of the winter's delivery, on demand.

There is nothing here, we think, to show separate and distinct contracts originally for the sale of different portions of this wood.   It is nothing more, certainly, than a contract for the sale of goods, ten thousand bushels of wheat, for example, with a stipulation that it shall be delivered and paid for at different times; and in such a case there could be no pretence for claiming that the contract was not entire.   In the case before us, it was not stipulated *absolutely* that any part of the wood should be delivered the second winter and year, but it was upon the condition, depending perhaps upon the sledding, that plaintiffs were unable to deliver it all that first winter.

In the case of sundry articles purchased at the same time, though for a separate price for each article, it is held that the sale is to be regarded as one entire contract for all, and not a several contract for each article. Browne on Frauds, sec. 335, and cases; *Baldy & al.* v. *Parker*, 2 B. & C. 37; *Elliott* v. *Thomas*, 3 M. & W. 170.   So is *Gilman & al.* v. *Hill*, 36 N. H. 311.   The same doctrine was applied where the parties made bargains for the purchase and sale of several lots of timber at different places some miles apart, the bargains being made at the different places and at separate prices, but all on the same day.   Browne on Frauds, sec. 335, citing *Biggs* v. *Whisking*, 25 Eng. Law & Eq. 257.

In *Scott* v. *Eastern Counties Railway Co.*, 12 M. & W. 33, where goods were ordered at one time, some of which were manufactured, and others not, it was held that the contract was entire for all the goods, and that the delivery and acceptance of the manufactured articles took the case out of the statute as to all.

In the cases cited of purchases of various articles of goods at one time, but at separate prices, some stress was placed upon the fact that

they were all included in one bill, tending to show that there was but one contract, which is the turning point in the inquiry.

In the case before us, we think the original contract was an entire one for the sale of the whole 700 cords of wood, with stipulations as to the time of delivery and payment, which in one event would defer the delivery and payment of part of the wood to the next winter.

In the last count and also in the opening of the cause, it is alleged that after plaintiffs had delivered nearly all of the 374 3-4 cords, the defendants requested them not to deliver any more that winter; but to deliver the balance the next winter, and promised to accept the same then, according to their aforesaid contract; and thereupon plaintiffs relaxed their efforts and finally desisted after delivering said 374 3-4 cords.

It was undoubtedly competent for the parties to have made at this time a new and independent contract in respect to the remainder of the wood, entirely superseding the old one. Whether they have done so or not must depend upon the evidence that may hereafter be offered. Upon the declaration and the opening of the cause we think it cannot be held that a new contract was then made superseding the old one, but rather an agreement modifying the original one as to the time of delivery of the remainder of the wood. The promise alleged was to accept the balance the next winter according to their aforesaid agreement, which would seem to recognize the continuance of the original contract. The case of *Cuff & al.* v. *Penn*, 1 M. & S. 21, was much like this in this respect. It was a written contract to deliver a quantity of bacon at different times, and after the delivery of several parcels, the parties, by parol, agreed upon other times for the delivery of the rest. This was held good, and that the original contract still remained in force. See 1 Phillips' Ev. 561.

It may be remarked, however, that if the original contract had been taken out of the statute of frauds by a partial delivery and acceptance, or payment, and so had become valid and binding, it could hardly be superseded by an agreement which was invalid under that statute.

As the case now stands, we are of the opinion that the original contract of sale was an entire one for the whole quantity of wood, and that we cannot hold that it has been superseded by a new agreement as to a part. We are aware that in *Seymour* v. *Davis*, 2 Sandf. Sup. Ct. 239, a different doctrine was held. The contract there was for the delivery to the defendant of from 500 to 800 barrels of cider during the fall and winter following, at such times and in such quantities as the plaintiffs could make it convenient to send; for which defendant was to pay $4 per barrel by his endorsed note at sixty days. Several parcels were delivered and such notes given for all but the last parcel of 100 barrels for which the suit was brought, the whole amount delivered being about 280 barrels. The court decided, in an action to recover the price of the 100 barrels, that the delivery and acceptance of the several shipments of cider under this agreement made so many distinct contracts of sale upon each of which the parties had distinct remedies; and the delivery and acceptance of one or more parcels, did not take the whole

original agreement out of the statute; and in fact, also held that a subsequent receipt and acceptance of part of the goods would not take out of the statute a contract for the sale and delivery of goods at a future period; that the original agreement being void could never be made valid, though subsequent acts might establish a new contract of sale embodying more or less of the original arrangement.

In respect to the doctrine that a subsequent receipt and acceptance will not take the contract of sale out of the statute, this case is distinctly overruled in *McKnight* v. *Dunlop*, 1 Seld. 537, in the Court of Appeals; and the case of *Boutwell* v. *O'Keefe & al.*, 32 Barb. Sup. Ct. Rep. 434, is in direct conflict with *Seymour* v. *Davis*. In *Boutwell* v. *O'Keefe*, there was a contract to furnish the defendants with all the meal they wanted at stipulated prices, to be paid for monthly, half in cash and half in stocks, and a delivery of meal at various times. The court say that it can no longer, since the case of *McKnight* v. *Dunlop*, be contended that the agreement could not be made valid by subsequent part performance, or that subsequent delivery of articles from time to time in execution of the contract are to be regarded as separate and distinct transactions or as so many separate and independent contracts.

The case of *Seymour* v. *Davis* goes upon the ground that a sale of goods which is invalid by the statute of frauds cannot be made valid by a subsequent delivery and acceptance of part; and therefore that when part are so delivered and accepted a new contract arises in respect to them; but it being settled that a subsequent delivery will be available, the foundation for the doctrine that a new contract is made by accepting part of the goods is taken away.

The cases cited by the court in *Seymour* v. *Davis* for the doctrine announced, do not, we think, sustain it. In one of those cases, *Mavor* v. *Pyne*, 3 Bing. 285, the defendant agreed to take twenty-four numbers of a periodical work to be delivered monthly, at a guinea a number, and he took eight of them and omitted to take the rest, though ready for him. In a suit to recover the price of those received by him the plaintiff was allowed to recover upon the ground that defendant had put an end to the contract.

In *Bowker* v. *Hoyt & al.*, 18 Pick. 555, another case cited, plaintiff bargained a quantity of corn to defendants and delivered a part of it, but refused to deliver the whole. In a suit for what he did deliver, it was held that, as defendant retained the corn delivered, he was bound to pay for it, deducting the damages caused by plaintiff's failure to deliver the rest. A similar doctrine is held in *Oxendale* v. *Wetherell*, 9 B. & C. 386.

If part of an entire quantity bargained for is delivered and absolutely accepted, the buyer will be holden to pay for what he has so received, although the seller refuses to deliver the rest. In such case the buyer may refuse to accept part without the whole, but if he choose to retain it after the seller has declined to deliver the rest, he must pay for it, although he would be allowed to deduct the damages for the failure to deliver the whole. *Champion* v. *Short*, 1 Camp. 53; *Baker* v. *Sutton*, 1 Camp. 55, in note.

Our conclusion is, then, that if the contract be originally entire, and it provides for the delivery of the goods at different times, and some are delivered and accepted under and in pursuance of that contract, it is no severance of it. If the vendee receive a part and then refuse to receive the rest, the vendor may maintain an action to recover the price of what is received.

The next question, then, is whether this agreement has been taken out of the statute by the delivery and acceptance of a part of the wood. The case stated is that the 374 3-4 cords were delivered and accepted by the defendants and paid for by them according to their promise, and the only question is whether an acceptance of a part of the property sold at a time subsequent to the making of the contract is sufficient to take the case out of the statute.

By that statute no contract for the sale of goods, wares or merchandise for the price of $33 or upwards, shall be valid "unless the buyer shall accept part of the property so sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment," or there be some note or memorandum, &c.

As will be perceived, the acceptance of part of the property at a period subsequent to the making of the contract is within the terms of the statute; and the question arises whether there is in the nature and object of this provision anything to limit the acceptance to the time the contract is made. The object of the statute is to prevent the setting up of pretended contracts of sale to be proved by oral testimony alone, which in the experience of mankind often leads to perjury; but the danger is supposed to be much diminished by the actual delivery and acceptance of a part of the property sold, or the payment of part of the price. These acts have ordinarily something substantial about them to attract attention, and therefore cannot be so easily proved by false testimony as a mere oral agreement may be.

The value of these provisions as a safeguard against perjury is not at all diminished, as we can perceive, by a construction which shall give the same effect to an acceptance or part payment subsequent to the making of the contract.

A subsequent delivery and acceptance, provided it is shown to be under, and in pursuance of, the previous agreement, (as it must be, *Davis* v. *Eastman*, 1 Allen 42z,) affords the same recognition of that agreement, and the same security against fraud and false swearing as if they were contemporaneous with the making of the contract.

Besides, in view of the great variety of cases of delivery differing as to time and circumstances, including deliveries by carriers, it would be exceedingly difficult to lay down a rule by which to determine whether such delivery and acceptance were at the time of the contract or not; and the fact that no such rule has been laid down is a strong argument against the existence of any such distinction.

In England a delivery and acceptance subsequent to the contract is held to be sufficient. In *Chaplin* v. *Rogers*, 1 East 192, there was a sale of a stack of hay, and about two months after the vendee sold a part to another, who took it away, and it was held that here was an ac-

ceptance which took the case out of the statute; and this case is recognized by *Bell, J.*, in *Shepherd* v. *Pressey*, 32 N. H. 56.

In *Walker* v. *Nassey*, 16 M. & W. 302, it is said by *Parke, B.*, that the "part payment" mentioned in the statute must take place either at, or subsequent to, the time when the bargain was made. See, also, *Carter & al.* v. *Touissaint*, 5 B. & A. 855.

In Browne on Frauds, sec. 337, it is said to be well established that an acceptance and receipt subsequent to the making of the bargain will take the case out of the statute. Such is the doctrine of *Marsh & al.* v. *Hyde*, 3 Gray 331, after full consideration.

In *Thompson* v. *Alger*, 12 Met. 428, it was decided that a payment of part of the price of goods after the time when the contract was made would take a case out of the New York statute of frauds, although the provision of that statute was that there should be payment "*at the time;*" the court saying that it was held, both in England and America, that a subsequent delivery and acceptance was sufficient. This is also the established law in New York. *Vincent* v. *Germand*, 11 Johns. 283 ; *Sprague* v. *Blake*, 20 Wend. 61, and *McKnight* v. *Dunlop*, 1 Seld. 342. In the latter case some stress is put upon the fact that the legislature struck out of the law as reported the words "*at the time,*" which would have required the acceptance to be when the contract was made ; but independently of this, the rule in New York is well established upon grounds applicable to the statute of 29 Car. II, and also to our own statute which is substantially the same.

In *Davis* v. *Moore*, 13 Maine 424, the plaintiff sold to defendant a quantity of mill logs at a price agreed. The bargain was in the forenoon, about one mile from the logs, and the buyer at the time employed the plaintiff's agent to haul a portion of the logs to defendant's mill, which he did in the afternoon of that day ; held, that having thus taken a part, the contract which was entire was good under the statute.

We think, then, that the contract as the case now stands, must be regarded as entire, and that the delivery and acceptance is sufficient to take the contract out of the statute, so far as respects the provision in question.

The remaining question is whether this contract falls within that class of contracts which are not to be performed within a year; and it becomes necessary to consider the construction given to the statute. By the Revised Statutes no action can be brought to charge any person upon an agreement that is not to be performed within one year from the time of making it, unless the agreement be in writing; and this is substantially like the statute of 29 Car. II, ch. 3.

In *Blandin* v. *Sargent*, 33 N. H. 239, it is said by *Bell, J.*, that the authorities cited for the plaintiff have established elsewhere the rule that the statute does not apply to any contract unless, by its express terms or by reasonable construction, it is not to be performed, that is, is incapable in any event of being performed, within one year from the time it is made ; and then he goes on to add : "If by its terms, or by reasonable construction, the contract can be fully performed within a year, although it can only be done by the occurrence of some contin-

gency by no means likely to happen, such as the death of some party or person referred to in the contract, the statute has no application, and no writing is necessary;" and it was accordingly decided that a promise by the defendant to do no more business at F., as a physician, was not within the statute, because the defendant might have died within the year, and then the promise might have been fully performed.

The principles laid down in this case are fully sustained by the authorities, and we think they are decisive of the question before us. Here the plaintiffs agreed to deliver as much of the lot of wood sold, supposed to be about 700 cords, as they could, that winter, and the residue, the next winter and year; and the defendants agreed to take the wood so delivered and pay for it at a certain price per cord, on demand, after each winter's delivery.

The plaintiffs, then, were bound to deliver it all, if they could, that winter, and the defendants to take and pay for it; and we think it cannot be said as a matter of law that the wood could not all have been delivered that winter. On the contrary, it is clear that it might be; and if so, the agreement was capable of being performed within the year. The most that can be said is that there was reason to expect there would be a balance to be delivered the next winter, but that is not enough to bring it within the statute as an agreement *not* to be performed in a year.

It is urged for the defendants that a reasonable construction of the agreement shows that the parties contemplated a longer period than one year for its performance. If by the term "contemplated," it is meant merely that the parties expected that the plaintiffs would be unable to deliver all the wood within the year, we think the defendants' position is not sustained by the authorities.

The cases, indeed, are very numerous where the parties must have expected that the agreement would not be fully performed within a year, and yet because by the terms of the contract it might be, it is held not to be within the statute.

Such is the doctrine of *Blandin* v. *Sargent*, where the parties must have expected that the contract would not have been performed within a year. Among the numerous cases that maintain the same doctrine, are *Fenton* v. *Emblers*, 3 Burr. 1278; 1 Salk. 280, Anon.; *Peters* v. *Compton*, Skin. 353; 1 Com. on Con. 86; *Souch* v. *Strawbridge*, 2 M. G. & S. 808; *Hinckley* v. *Southgate*, 11 Vt. 430; *Artcher* v. *Zeh*, 5 Hill 200.

*Case discharged.*