LARROWE *v.* LEWIS *et al.*

(*Supreme Court, General Term, Fifth Department.* October 23, 1890.)

CUSTOM AND USAGE—EVIDENCE—TO EXPLAIN CONTRACT.

Defendants entered into a written contract to sell to plaintiff's assignor, at a certain price, all the cross-ties that defendants could obtain. The ties were inspected by an agent of the purchaser, and classified by him as "firsts" and "seconds," indicating quality. During the inspection, defendants notified the purchaser that they would not recognize any ties inspected as "seconds." *Held* in an action for alleged overpayment on the ties, that the referee properly refused to find that ties are classified as "first class," "second class," and "culls;" that the ties sold by defendants were thus inspected; and that the second-class ties were taken at half the price of those of first class, since such requests involved proof of a general custom, to modify a contract, without evidence of its application to the facts of the case.

Appeal from Livingston county court.

Action by Albertus Larrowe against Herman J. Lewis, D. Horatio Lewis, and Harris Lewis, to recover an alleged overpayment of moneys by plaintiff's assignor to defendants. Judgment was entered in Livingston county on the report of the referee dismissing the complaint, and plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*E. A. Nash,* for appellant.   *J. F. Parkhurst,* for respondents.

CORLETT, J.   On the 23d day of May, 1881, a contract was made of which the following is a copy:                                    "MAY 23, 1881.

"*Messrs. Lewis Bros.*—GENTS: I will give you 47 cents for your white and yellow oak, and 37 cents for black oak, cherry, red oak, chestnut, butternut, and slippery elm ties piled up on the flats below the mill, you to give me all you can get during the season suitable for rafting; ties to be counted and paid for before put in the river, you to put them in the river as directed by me.
   · [Signed]                                             "T. J. REYNOLDS.
   "We accept your offer.
   [Signed]                                               "LEWIS BROS."

Before any of the ties were counted or delivered, a quantity was washed away by high water, on account of which the defendants made a claim upon Reynolds, and he agreed to allow them, out of the moneys advanced by him, the sum of $125, the defendants to have all the washed-away ties they could find; also that, on account of the allowance of the ties washed away, those to be delivered should be drawn to a railroad station near by. The referee also found that it was agreed between the parties that the ties should be counted according to the contract, and that the defendants should furnish men enough to deliver the ties to Reynolds. . The referee also found that the word "counted," as used in the contract, and as understood by the parties,

meant that the ties should be inspected; that they were inspected by one Tallman, an inspector of railroad ties, employed by Reynolds; that Tallman classified all ties not rejected as "firsts" and "seconds," indicating that the ties classified as firsts were of first class, and those classified as seconds were of that quality. He also found that, after they were so inspected, they were counted and numbered by a brother of Reynolds, and one of the defendants, and that the brother entered the same upon a book kept by him, and called the number to said defendant, who entered the same upon a book kept by him, the books being compared from time to time to correct differences. That the numbers as so entered corresponded with the inspection of Tallman, and were: 857 white and yellow oak ties, firsts; 675 white and yellow oak ties, seconds; 2,656 red-oak and C. ties, firsts; 2,205 red-oak and C. ties, seconds. That the ties so inspected and counted were delivered to Reynolds about the 16th day of October, 1882. While the inspection was progressing, the defendants notified said Reynolds that they did not recognize and would not accept any ties counted or inspected as seconds. On the 3d day of August, 1881, Reynolds purchased from the defendants 13,708 feet of oak timber, at the price of $21 per thousand, and on the 3d day of February, 1883, 32 red-oak ties, for the price of 37 cents each; 16 red-oak ties at the price of $18\frac{1}{2}$ cents each; 14 red-oak ties, at the price of 47 cents each; 3 white-oak ties, of the value of $23\frac{1}{3}$ cents each: and 108 chestnut ties of the value of 45 cents each. The defendants also drew to the railroad station for Reynolds, 2,578 ties at the agreed price of 5 cents each. The referee also found that the values of the ties delivered at the price stated in the contract were 1,532 white and yellow oak ties, at 47 cents each, $720; 4,861 red-oak and C. ties, at 37 cents each, $1,798.57; that the 13,708 feet of oak purchased from the defendants by Reynolds amounted to $282.87; also that the ties purchased by Reynolds from the defendants on the 3d of February, 1883, were of the value of $70.68; that the services of the defendants for drawing ties were worth $125.90; and the allowance for ties washed away, $125,—amounting in all to $3,128.88. On the 12th day of February, 1883, Reynolds assigned his claim to the plaintiff, which amounted, according to his theory, to $483.12. Afterwards, this balance was demanded, and the defendants refused payment. The referee dismissed the complaint.

The plaintiff's counsel requested the referee to find that ties are classified as "first class," or "firsts," and "second class," or "seconds," and "culls;" also that, in pursuance of the arrangement, the ties were inspected by Tallman, and were counted as above stated, and delivered by the defendants to Reynolds; also that the second-class ties were taken and received by Reynolds at one-half the price of first-class ties. These requests were severally refused and exception taken. Each of these requests involved the proposition that proof of a general custom, without evidence of its application to the facts of this case, operated as a change or modification of the original contract between the parties. This is the plain import of the language of the requests, and it was manifestly so understood by the referee. There was no error in these refusals. The defendants on the trial admitted receiving the sum of $3,000.90. The case was tried once before, and resulted in a report in favor of the plaintiff for the alleged overpayment. On appeal, the judgment was reversed, and a new trial granted by this court. 44 Hun, 226. One of the justices in his opinion states: "Under the contract in question, the defendants were required to furnish and deliver to the plaintiff's assignor merchantable and probably first-class railroad ties of the kind of timber specified, and he was required to accept all such ties offered, and pay therefor the stipulated price, having the right to inspect such as he was required to accept in performance of the defendant's contract. No element of uncertainty is found in the contract. The language employed is neither technical, indefinite, nor equivocal." The other justice delivering the opinion states: "The original written contract was executory. It has so been practically understood and construed by the par-

ties. The law implies, in every such contract for the sale of merchandise, that it shall be of merchantable quality, and such as will at least bring the average price." Citing *Howard* v. *Hoey*, 23 Wend. 350; *Sprague* v. *Blake*, 20 Wend. 61; and *Hamilton* v. *Ganyard*, *42 N. Y. 45. A new trial was granted upon the ground that the referee erred in basing his decision on what was alleged to be a well-known· and established custom in reference to the inspection of ties, and that by this custom ties were inspected as first and second class. The quotation from the first opinion clearly indicates that, in the judgment of the learned justice, the contract was not ambiguous, and that, in the absence of explanation, it referred to first-class ties. On ·the trial from which this appeal is taken, there was some evidence tending to show that it was agreed between the parties that half-price should be paid for second-class ties. The learned referee practically proceeds on the assumption that the plaintiff's assignor was bound to pay the sum specified in the contract for all ties delivered and accepted. He does not find, nor was he requested to find, that, if a verbal contract for half-price was made in reference ·to second-class ties, this would fix their price. . The request was for the referee to find that the seconds were taken at one-half the price of firsts; but there was no request to find that there was any agreement for half-price in the case of seconds, and· no such agreement was found by the referee. It is undoubtedly true, without regard to the construction of the contract, that it was competent for the parties at the time of delivery to waive all distinction between first and second class ties. The referee, as the report, refusals to find, and exceptions show, made a substantial finding that the contract required a payment of the price therein mentioned for all ties delivered and· accepted. This would be so in the absence of a modification, which could not be proved by custom, as was decided on the former appeal. The delivery and acceptance ·of the ties would show *prima facie* that their quality complied with the terms of the contract; or, if it did not, that all defects were waived. If the referee had been distinctly requested to find that it was verbally agreed that second-class ties should be received at half-price, and he had so found, the question would be before this court to determine whether such a contract was enforceable. If he refused so to find, the question would have been presented whether the evidence required such a finding; but, in the absence of such requests or findings, the questions urged by the learned counsel for the appellant for reversal are not before this court. It follows that the judgment must be affirmed.

MACOMBER, J., concurs. DWIGHT, P. J., not voting.