Wright, J.
The action was for the breach of a contract to sell and' deliver a crop of tobacco growing on the land of the defendant. ■ In September, 1856, the parties contracted for the sale of the crop. The plaintiffs agreed to pay ten cents per pound on the delivery thereof, well cured *361 and boxed and in good condition, and the defendant agreed to sell and make such delivery, in the early part of May, 1857, at such place in the city of Syracuse as the plaintiffs should thereafter designate. The contract, therefore, was executory. In the early part of April, 1857, the plaintiffs notified the defendant to deliver the tobacco at the storehouse of Greenman & Co., in Syracuse. On the 20th April, 1857, the defendant delivered the same at the place designated, and it was received and accepted by the plaintiffs. The breach alleged relates to the quality and condition of the tobacco at the time it was delivered,- and the contract of sale. executed. It is averred to have been in bad condition, not having been properly cured, and being wet, sweaty and rotten. The tobacco was accepted in execution of the contract, and retained without notifying the defendant of its defects, after discovering them, or returning, or offering to return it, or making any request to take it back. The plaintiffs converted the property, and some seventeen* months after delivery and acceptance bring their action to recover damages resulting from its being improperly cured and being in bad condition when delivered. The question is, whether the action .is maintainable. The learned judge, at the trial, thought it was not, and non-.suited the plaintiffs; and the supreme court, on appeal, concurred with him in opinion.
This conclusion, I think, was right. It is not claimed to be otherwise, unless there was a warranty that the tobacco, when delivered, should be well cured and in good condition. But the stipulation in respect to the quality and condition of the article, when delivered, constituted no express warranty. The contract was executory, for the sale of a growing crop of tobacco, to be delivered the spring following, well cured and in good condition. The article bargained for, and to be furnished in the future, was a merchantable crop of tobacco. This was what the vendor agreed to sell and the vendee to purchase. It was *362 the sale of a particular thing by its proper description» merely; and the descriptive words used for defining the thing agreed to be sold were of the substance of the con. "tract, not collateral to the main object of it. The breach alleged was that the tobacco was not, when delivered, well cured and in good .condition, but on the contrary was in bad condition and was wet, sweaty and rotten; that is, it was an inferior, unmerchantable commodity, In an executory contract for the sale of personal property, the law implies that the article, when furnished, shall be of merchantable. quality. (Hargous v. Stone 1 Selden, 73, and cases cited.) And if "the tobacco, when delivered, was not well cured and in good condition, but was wet, sweaty and rotten, it was not merchantable. (Hamilton v. Ganyard, 34 Barbour, 204.) In legal effect, therefore, the agreement as to which the breach was "alleged was' the same as the law would imply, in the absence of words of express contract. It would be established upon proof of a contract to sell and deliver" the tobacco at a future time, and without proof of express words between the parties, and if express" words were used between the parties, yet superadding to the terms of a contract, words expressing an obligation which the law implies, does not change the nature or extent of the obligation or the remedy upon it. (Sprague v. Blake, 20 Wend. 64.)
A warranty, then, "cannot be predicated upon the contract alleged in the complaint; and the rules of law by which the rights of the parties in respect to warranties are regulated, are inapplicable. A breach of the contract was not a breach of warranty, but a mere nomcompliance with the contract that the defendant had agreed to fulfill.
In cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to *363 ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent, on his part, that the contract has been performed. The delivery of property corresponding with the contract is a condition precedent to the vesting of the title in the. vendee. ' The parties understand that the vendee is not bound to accepty the property tendered, except upon this condition. This the vendee is to determine upon the receipt of the property There is no intention that a defective article should be accepted, and that the vendee should rely upon the covenant for his indemnity. The latter is not bound to, receive and pay for a thing that he has not agreed to purchase; but if the thing purchased is found on examination to be unsound, or not to answer the order given for it, he must immediately 1‘eturn it to the vendor, or give him notice to take it back, and thereby rescind the contract, or he will be presumed to have acquiesced, in its quality. He cannot accept the delivery' of the property under the contract, ‘retain it after an opportunity of ascertaining its quality, and recover damages, if it be not of the quality or description called for by such contract. It is understood of every contract for the future sale and delivery of an article of merchandize, even without express terms, that it shall be of merchantable quality; and I am not aware that it has ever been doubted, that upon the delivery of property pursuant to such a contract, the vendee, by retaining the property without notice to the vendor, waives all remedy upon the contract for any breach of an obligation implied by law.
The principle that when the contract of sale is executory, the remedy of the purchaser to recover damages on the ground that the article furnished does not correspond with the contract, will not survive an acceptance and retention of the property, after opportunity to ascertain the defect, without notifying the vendor, is well supported by autho *364 rity. In Fisher v. Samuda (1 Camp. R. 190), the declaration stated that in consideration that the plaintiff had undertaken to buy of the .defendants a certain quantity of beer, uo be shipped to Gibraltar, they undertook to furnish and deliver to him good and sufficient beer for that purpose. The breach alleged was.that the beer furnished and delivered was bad, and unfit to be shipped to Gibraltar, &c. The proof was that the beer was delivered in May to be shipped to'Gibraltar the following autumn, and in July it was discovered to be of bad quality, and unfit for the purpose intended. The earliest notice given to the defendants was in December. Lord Ellenborougii held that, “ under these circumstances (retaining the beer so long without notice), the plaintiff must be presumed to have assented to its being of good quality, and to have acquiesced in the due performance of the contract on the part of the defendants.” In Grimaldi v. White (4 Esp. R. 95), the defendant contracted with the plaintiff for pictures at certain prices, pursuant to specimens exhibited. The pictures had been sent to the defendants, who, at the time of delivery, had objected to the execution as being inferior to the specimens exhibited; but he did not return them. In assumpsit to recover the contract price of the paintings, the defence intended to be relied on was the inferiority of the execution, and, of course, of value; and the defendant was proceeding to call witnesses to ascertain what was the real value, but, on objection, the evidence was excluded. Lawrence, J., said: “ The defendant relies on the circumstances that they (the pictures) are of an execution very inferior to the specimens exhibited, and which the plaintiff undertook to paint conformable thereto. When an artist exhibits specimens of his art and skill as a painter, and affixes a certain price to them, if a person is induced to order a picture from an approbation of such specimens, and the execution of it, when delivered, is inferior to the specimen exhibited, he has a right to refuse to receive it, or return it, as not being *365 ■ conformable to that performance which the painter undertook to execute; but if he means to avail himself of that objection, he must return the picture—he must rescind the contract totally. Having received it under a specific contract, he must either abide by it or rescind it in toto, by returning the thing sold; but he cannot keep the article received under such a specific contract, and for a certain price, and pay for it at a less price than that charged by the contract.” In Milnor v. Tucker (1 Car. & Payne, 15), a person contracted to supply a chandelier sufficient to light a cer- • tain room. The purchaser kept the chandelier six months, and then returned it. He was held liable to pay for it, although it was not according to the contract. In Sprague v. Blake (20 Wend. 61), the action was assumpsit for wheat sold and delivered. The proof was that the defendant had agreed to purchase the whole of a crop of wheat belonging to the plaintiff, estimated to amount to between three hun'dred and four hundred bushels, to be delivered at a place on Seneca lake, for which the defendant agreed to pay one ■dollar per bushel. By the terms of the agreement- the wheat was to be merchantable. Subsequently a part of "the wheat was delivered at the place specified, and receive^ by the defendant; and an arrangement was then made between the parties that the residue of the crop should be delivered at the storehouse of one Morgan, in Penn Yan. In pursuance of this arrangement, the plaintiff delivered at Morgan’s storehouse about twenty-eight bushels of the wheat, and for the delivery óf this parcel the -action was brought, the defendant refusing to pay for the same. It ■ was proved that Morgan was the agent -.of the defendant in receiving wheat, and that the wheat in question, together with other wheat, was taken away from his storehouse by the defendant’s boatmen. The defendant attempted to set up the inferior quality of the wheat, and offered to prove its real value, with the view of recouping damages for a breach of the contract, but the, evidence was rejected. The *366 court charged the jury that if they were satisfied the wheat was received by the defendant or his agent, they would find for the full contract price. The plaintiff had a verdict for the whole contract price, and on error to the supreme court the judgment was affirmed. The supreme court cite approvingly the case of Fisher v. Samuda (supra), and lay down the doctrine that although by the terms of a contract an article agreed to be delivered is to be of a merchantable quality, still if an inferior article be delivered and accepted, the purchaser, when called upon for payment, is not entitled to a reduction from the contract price on the ground of the inferior quality of the article. He must refuse to accept it, or if its inferiority be subsequently discovered he must return it or require the purchaser to take it back In Hargous v. Stone (1 Selden, 73), it was held that if the contract was an executory one, to furnish' goods of a par ticular description, the purchaser was bound to examine them when received and opened, and to have returned them if the quality was not such as was promised. . Hoi having done so, he waived all objections on account of ' defects of quality. In Shields v. Pettee (2 Sand. S. C. R. 262), it was held that on a sale of goods, if the buyer, on-receiving a part of the quantity sold, finds they are not of the kind or quality which his contract entitles him to, he is not at liberty to retain such part, and claim damages for the non-delivery of the entire quantity. Nor can he require the delivery of the residue, retaining a claim, for .damages. He must either receive the article as it is, or he must return the portion delivered, and then enforce 'his claim for damages. He can recover no .damages if he refuse to return the part delivered. (See also Howard v. Hoey, 23 Wend. 350; Hopkins v. Appleby, 1 Stark. 477; 2 Kent’s Com. 480; Parsons on Contracts, 475.)
The case of Hopkins v. Appleby (1 Starkie, 477), was this: The defendants, soapmakers in Bath, ordered of the plaintiffs in London .eight sarrands of Spanish barilla and *367 four sarrands of salt barilla, which the plaintiffs warranted to be of the best quality. The order was given in October, and the barilla reached its destination in December. The defendants proceeded to use it, when it was discovered that'the Spanish barilla was of inferior quality. They con-. tinued, however, to use it without complaint, and made no remonstrance until it had been wholly consumed. ’ In assumpsit to recover the price, the defence was interposed that the quality was not as contracted for, and that the defendants had paid into court as much as the barilla was worth. The plaintiffs had a verdict. Lord Ellbnborottgh said: “When an objection is made to an article of sale, common justice and honesty require that it should be returned at the earliest period, and before the commodity has been so changed as to render it impossible to ascertain, by proper tests, whether it is of the quality contracted for. * * * It was incumbent on the defendants to give the seller an opportunity of establishing his case by the opinion of intelligent men on the subject, and not throw a veil of obscurity over it, and debar the party from the fair means of ascertaining the quality. *■ * * The party who extinguishes the light, and precludes the other party from ascertaining the truth, ought to bear the loss.” These considerations apply with great force in the present case. The tobacco was delivered to the plaintiffs and accepted by them in April, 1857, and the first notice to the vendor of any defect was when the suit was commenced, in September, 1858. The plaintiffs deprived the defendant of all opportunity to ascertain or establish the actual condition of the tobacco at the time of delivery. Tobacco is an article ordinarily the subject of immediate sale and consumption, and no opportunity was given to the vendor to test the claim of the plaintiffs by examination. The defendant had a right to suppose, from the silence of the plaintiffs, that they assented to the quality of the tobacco, and that *368 it' corresponded with the contract. The judgment of the supreme court should be affirmed.