### Lawton and others *vs.* Keil and others.

On an executory contract, by parol, for the sale of corn, sound corn is to be delivered, and if that which is delivered is not sound, the purchasers are not bound to accept. If, after delivery, it is found to be unsound, they may return the corn and refuse to complete the contract.

Such a contract, until performance, is void by the statute of frauds. Neither party is bound to complete it.

But the parties are at liberty to ratify the agreement by performance; and the delivery of the property, or the payment of the money, under the contract, will operate to make valid a contract which otherwise could not be enforced.

Such ratification is not a new contract. It only makes valid and confirms the parol agreement, which thereupon becomes an agreement valid and binding on both parties, to be enforced and carried out according to the original terms.

Where the sale is of a specific article in possession of the vendor, the representation may amount to a warranty; but if it is merely to sell a quantity of any goods which are to be sound in quality, the remedy of the purchaser is to refuse to accept on delivery, or, if he discovers the defect afterwards, to rescind the contract and return the goods.

Where the vendor of corn had not the corn in his possession; but had purchased it from some other person as sound corn, and he so stated to the purchaser, adding that he would sell it as such; *Held* that this was nothing more than a mere representation, and was not a warranty.

That the purchaser, on discovering that the corn was damaged, could have refused acceptance; or, if he had no opportunity to examine it, before shipment, could have notified the party, before sale, and thereby protected himself from loss.

APPEAL by the plaintiffs from a judgment ordered on the trial, at the circuit, dismissing the complaint.

At the times mentioned in the complaint, the plaintiffs were copartners, residing and doing business in Macon, Georgia, and the defendants were copartners, doing business at Smith Grove, Kentucky. In April, 1867, the defendants agreed, under a verbal cantract, to sell to the plaintiffs 1500 bushels of sound white corn. The corn was to be delivered at the railroad station at Smith Grove, Kentucky, and was to be paid for when delivered. The corn was delivered and paid for according to contract. A portion of it went through to Macon, and was received by

the plaintiffs, it was claimed, in a damaged condition, but no testimony, whatever, was given as to the actual condition of this portion of the corn, or the damage sustained thereon. It was claimed by the plaintiffs that a portion of the corn was sold at Nashville, *en route* for Macon, as damaged corn. No notice was ever given to the defendants of such sale, nor of the time and place of conducting the same, nor was any offer ever made by them to return the same to the defendants.

The plaintiffs brought this action to recover damages alleged to have been sustained by them, by reason of the unsound condition of the corn so sold.

The justice before whom the action was tried, when the plaintiffs rested their case, upon motion of the defendants' counsel, ordered a nonsuit, upon the ground that the evidence showed an executory sale of corn; that no warranty could be deduced from the evidence, and that therefore no recovery could be had without showing an offer on the part of the plaintiffs to return the corn, or a notice to the defendants of the time and place of sale of the same.

*James A. Seaman,* for the appellants.

I. The evidence is to be looked at in the light most favorable to the plaintiffs, because, if there be found any evidence of a valid warranty on the part of the defendants, the judge erred in dismissing the complaint, and should have sent the case to the jury.

II. If there was such valid warranty on the part of the defendants, the right of damages existed at the very moment when the contract was completed, and no offer to return, and no notice of sale was necessary. (*Voorhees* v. *Earl,* 2 *Hill,* 288. *Cary* v. *Gruman,* 4 *id.* 625. *Muller* v. *Eno,* 14 *N. Y.* 597.)

III. There was evidence to go to the jury of an executed contract. 1. The evidence of the witness, the de-

Lawton *v.* Keil.

fendant Rector, shows an executed, and not an executory contract. The agreement at Bowling Green, as shown by him, was for the sale of 1500 bushels of corn, in bags, purchased by him that morning, and then at Smith Grove, for the price of 90 cents a bushel. It was not to sell 1500 bushels of sound corn, but *the* 1500 bushels specifically designated. This agreement, at common law, would have vested the title in the plaintiffs, and the defendants would have had nothing to perform, in relation to the contract, but to deliver possession upon payment. (*Vincent* v. *Germond,* 11 *John.* 283. *Joyce* v. *Adams,* 4 *Seld.* 296, *and cases cited. Kimberly* v. *Patchin,* 19 *N. Y.* 330. 1 *Pars. on Cont.* 435, *and note b.* 2 *Kent Com.* 492, *n.* 1, 11*th ed. Noy's Maxims,* 88. *Shep. Touch.* 224.) 2. But the agreement, though good at common law, was void by the statute of frauds. When the conversation between Rector and Lawton closed, there was in existence no contract that the law would recognize. But the terms of their attempted, though void, agreement remained as propositions settled, and according to which the parties respectively were to buy and sell, until they were finally carried out by delivery of the goods and payment of the price. Until that payment and delivery there was no existing contract. When the payment and delivery took place, there was a contract—an *executed* contract—and there never was any other. This contract was a fulfillment of the terms involved in the conversation of Lawton and Rector, and among those terms was the warranty. There was, then, when the corn was delivered, and the price paid, an *executed* contract, containing a warranty. (*Sprague* v. *Blake,* 20 *Wend.* 61. *Foot* v. *Bentley,* 44 *N. Y.* 166.)

IV. There was, in the case, evidence of a warranty. 1. The declaration of the defendant Rector, testified to by himself, that when asked by the plaintiff about the quality of the corn, he answered that he "had bought it as sound corn, and would sell it to him as such," was a

.warranty of soundness. 2. It was not an undertaking that he would deliver 1500 bushels of sound corn, but that the designated lot, not then present for examination, was sound. 3. The representations and undertaking of the defendant Rector come fully within the definition of a warranty, as laid down in the leading cases, namely, any representation made by the vendor, of the state of the thing sold, at the time of the sale, as an inducement to buy, and relied on by the purchaser in purchasing. (*Chapman* v. *Murch*, 19 *John.* 290. *Cook* v. *Moseley*, 13 *Wend.* 277. *Roberts* v. *Morgan*, 2 *Cowen*, 438. *Whitney* v. *Sutton*, 10 *Wend.* 412.)

V. The amount agreed upon between Rector and Lawton was paid by the plaintiff's agent a few days after the arrangement between the principals, without abatement of price, and without any instructions or authority to the agent to modify the terms of the agreement, and without any such modification. Therefore, the warranty included in the bargain, as originally made, certainly entered into the contract as finally executed and consummated.

*H. C. Van Vorst*, for the respondents.

I. The evidence shows that the sale of corn, upon which this action was brought, was an executory sale. William J. Lawton, one of the plaintiffs, testifies directly to the point: " The contract referred to was made in the spring of the year 1867, and was for 1500 bushels of sound white corn. The said contract was not in writing. The terms of the contract were about these: Mr. Keil agreed with witness to deliver 1500 bushels of sound white corn, on the Louisville and Nashville railroad, at Smith Grove, at ninety cents per bushel. The contract referred to was made between the 10th and 15th of April, in the year 1867. The corn was to be delivered in sacks, in merchantable order. The payment was to be made by Messrs. Hall & Long, at Louisville, Kentucky. The payment was

to. be made upon· the delivery to them of the invoice bill. of lading, or railroad receipt, at Louisville, Kentucky." The only other testimony, in regard to the terms of the contract, is found in the testimony of James Rector, as follows : "The delivery was to be made in cars at that point (Smith Grove ;) no certain date for delivery, except the time of payment, was made. * * * We were at a depot waiting for a train when Lawton asked me if I knew of any corn for sale, I replied I had bought 1500 bushels of Rasdale, at Smith Grove station, that morning, that I would sell. Lawton asked me what I would take for it, and I replied, ninety cents per bushel. Lawton asked me about the quality of the corn. I told him I had bought it as sound corn, and would sell it to him as such. He then said he would take it, to be delivered on the cars at Smith Grove."

It is submitted that this testimony—all there is in the case concerning the terms of the contract—clearly shows that this was an·executory contract. No part of the corn was, at that time, delivered. No payment was made. 1500 bushels of sound white corn were to be delivered at a future time, and paid for when delivered, and the delivery of any 1500 bushels of sound white corn would have satisfied the contract, according to the plaintiffs' own testimony.

II. The contract being executory, and the corn having been delivered and accepted under it, no action will lie for damages, on the ground that the corn was . unsound when delivered, unless the corn be· returned, or an offer to return be made. "In cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee, after opportunity to. ascertain the defect, unless notice has been given to the vendor, or the vendee offers

Lawton *v.* Keil.

to return the property. The retention of the property by the purchaser is an admission, on his part, that the contract has been performed. A vendee is not bound to receive and pay for a thing that he has not agreed to purchase, but if the article delivered is found, on examination, to be unsound, or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back, or he will be presumed to have acquiesced in its quality. He cannot accept the delivery of the property under the contract, retain it after having had an opportunity of ascertaining its quality, and recover damages if it be not of the quality or description called for by the contract." (*Reed v. Randall, 29 N. Y. 358, and cases there cited. Pomeroy v. Shaw, 2 Daly, 267, since affirmed in the Court of Appeals ; not yet reported.*)

III. This principle applies equally, whether the property contracted to be sold be or be not *in esse* at the time of making the contract. In *Reed v. Randall, (supra,)* the property was not *in esse ;* in *Sprague v. Blake,* (20 *Wend.* 64,) the property was *in esse.* The same principle was applied, and there does not appear to be any ground for making a distinction.

IV. If it be considered that there was, in this case, an executory contract for the sale of a specific quantity of corn, the same principle applies. In *Sprague v. Blake,* (20 *Wend.* 64,) there was a contract for the sale of a specific crop of wheat *in esse,* and it was held that, " although, by the terms of a contract, an article agreed to be delivered is to be of a merchantable quality, still, if an inferior article be delivered and accepted, the purchaser, when called upon for payment, is not entitled to a reduction from the contract price on the ground of the inferior quality of the article. He must refuse to accept it ; or if its inferiority be subsequently discovered, he must return it, or require it to be taken back." Here the corn was accepted by the plaintiff's agents, and sold by them. The defendants' con-

trol over it ceased upon delivery at the railroad station at Smith Grove, in accordance with the plaintiffs' directions.

V. This action is upon a breach of contract, and not upon á breach of warranty; and the rules of law, by which the rights of parties in respect to warranties are regulated, are inapplicable. For there is no evidence in this case from which a warranty can be deduced. The contract called for 1500 bushels of sound white corn. It was not claimed that the corn was not of the kind contracted for; fault is found with its quality. If the contract had merely been for 1500 bushels of corn, the law would have implied that it should be sound; hence the superadding the word " sound " only adds what the law would have implied, and does not change the nature of the contract, or extent of the obligation, or the remedy upon it. (*Hargous* v. *Stone*, 1 *Seld.* 73. *Hamilton* v. *Ganyard*, 34 *Barb.* 204. *Sprague* v. *Blake*, 20 *Wend.* 64. *Reed* v. *Randall*, 19 *N. Y.* 358.)

VI. If the propositions already laid down be correct, all the exceptions of the plaintiffs are immaterial; for even if well taken, the result could not have been affected by the decision of the justice; but it is submitted that the exceptions were not well taken.

VII. The nonsuit was correct, upon the grounds stated by the justice, and the judgment entered thereon should be affirmed.

*By the Court,* INGRAHAM, P. J. The parol contract, when made, was an executory contract, for the sale of corn. On performance, sound corn was to be delivered, and if not sound the defendants were not bound to accept; and if, after delivery, it was found to be unsound, they could return the corn and refuse to complete the contract. This contract, until performance, was void by the statute of frauds. Neither party was bound to complete the contract. The parties were at liberty to ratify the agreement by performance; and the delivery of the property, or the

Lawton *v.* Keil.

payment of the money under the contract, operated to ratify and make valid a contract which, otherwise could not be enforced. This ratification was no new contract. It only made valid and confirmed the parol agreement, which thereupon became a valid and binding agreement on both parties, to be enforced and carried out according to the original terms. (20 *Wend.* 61, 63.) The real question then is, whether an executory contract for the sale of grain, in which the vendor agrees to sell the grain as sound, contains a warranty, or a mere representation. The rule in such cases is well explained by Daniels, J., in *Rust* v. *Eckler*, (41 *N. Y.* 488, 491.) He says: "The sale was of the defendant's dairy of cheese, which, at that time, consisted of an ascertained and definite collection of cheese, and it was as to these that the evidence tended to show a warranty. This circumstance distinguishes the present from those cases in which the actions were brought for the breach of executory contracts for the future sale and delivery of personal property. In the latter class of cases, any articles of the quality contracted for will answer the requirements of the contract. And for that reason, it has been held that the party receiving the property waives his right to insist that the article is inferior in quality to that which, by the terms of the agreement, he was entitled to receive, when he accepts and retains the property. In the one instance, the seller agrees to deliver to the buyer articles of a particular quality, while in the other, the agreement is, that the particular article actually delivered possesses the quality stipulated for. The contract, in the latter, relates to the specific article delivered, forming the identical subject of the agreement. And if it proves to be unperformed, the right of the buyer to maintain an action upon it for the recovery of the damages sustained by the breach, is not lost by the circumstance that he may have received and retained the article sold." In *Hart* v. *Wright*, (17 *Wend.* 267,) after reviewing the

cases in regard to implied warranties, Cowen, J., says : "A contract to deliver goods, generally, of a certain description is another matter. There the contract is executory, and the vendee may take his ground on a defective article being tendered. He has doubtless a right to insist that it shall be merchantable; and if it prove not to be so, after he shall have taken reasonable time to inspect it, he may return it." · In *Sprague* v. *Blake*, (20 *Wend.* 61, 64,) Cowen, J., says : " The wheat, by the terms of the agreement, was to be merchantable. This is understood of every such contract, even without express terms, when it is executory. When the party comes to deliver an inferior article, then is the time for the vendee to refuse, or at least, as soon as he dissovers what the quality of the article is, and offers to return it. When it is fully accepted, a new rule of construction arises. The executory contract is performed; no action lies upon that; no defense, therefore, can be based upon it; but either must go upon an actual sale and delivery. The acceptance is an assent that the terms of the executory contract were fulfilled."

From these cases the rule may be said to be, that where the sale is of a specific article in possession of the vendor, the representation may amount to a warranty; but if it is merely to sell a quantity of any goods, which are to be sound in quality, the remedy of the purchaser is to refuse to accept on delivery, or, if he discovers the defect afterwards, to rescind the contract and return the goods. The application of this rule to the present case shows that the decision was correct. The vendor had not the property in possession; he had purchased it from some other person as sound corn; he so stated to the vendee; and added, he would sell it as such. I think this was nothing but a mere representation of his belief, and was not a warranty, within the cases referred to. The purchaser could have refused acceptance; or, if he had no opportunity to ex-

amine it before shipment, could have notified the party before sale, and thereby protected himself from loss.

Unless there was·a warranty proved, there was no cause of action shown, and the ruling at the circuit was correct.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 1, 1872. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]