McKEWAN (UNITED STATES v.). See Case No. 15,692.

MACKEY (BULLINGER v.). See Cases Nos. 2,126 and 2,127.

## Case No. 8,859.

### In re McKIBBEN.

[12 N. B. R. (1875) 97.] [1]

### District Court, E. D. Michigan.

BANKRUPTCY—DEFECTIVE PETITION—AMENDMENT—AFFIDAVITS BEFORE NOTARIES — FRAUDULENT MORTGAGE—APPLICATION FOR ARREST—COMMISSIONER'S SIGNATURE — DEPOSITION NUNC PRO TUNC.

1. A petition was filed against M. by seven of his creditors. On the hearing of the order to show cause. it appeared that two of the creditors' claims were for amounts less than two hundred and fifty dollars each. but that the five remaining did in fact constitute the requisite number in value and amount. *Held*, that the petition was defective in its allegations, and did not make out a case for an adjudication. but that it might be amended so as to conform to the facts.

[Cited in Re Hadley, Case No. 5,894. Distinguished in Re Hall. Id. 5,923. Cited in Roche v. Fox. Id. 11,974; Re Blair. Id. 1,481; Re Donnelly, 5 Fed. 787; Woolridge v. McKenna, 8 Fed. 679.]

2. Affidavits taken before notaries public cannot be read in matters pending before this court.

3. A fraudulent chattel mortgage on the bankrupt's stock of goods, to secure an alleged debt of several thousand dollars, made with intent to hinder, delay, and defraud creditors. is a sufficient act of bankruptcy to warrant an adjudication.

4. In an application for a provisional warrant and order of arrest of the debtor. under section 40 of the bankrupt act of 1867 [14 Stat. 536], the better practice is to file a separate petition. supported by affidavits of persons having knowledge of the facts. when the same are not stated in the petition of the petitioner's own knowledge.

[Cited in Re Hadley, Case No. 5,894.]

5. In the present case. as the main facts are upon information and belief, a provisional warrant and order of arrest will not be granted: but, as sufficient cause does in fact exist for the issuing of a provisional warrant, leave will be given to make another application.

[Cited in Re Hadley, Case No. 5,894.]

6. Where the commissioner who took the deposition in proof of debts failed to sign the jurat to the deposition, the omission may be supplied if the commissioner distinctly recollects the fact of the creditor signing and verifying it in his presence. and, if not. the party may be sworn and the deposition filed nunc pro tunc.

These were motions (1) to vacate the order to show cause why [James A.] McKibben should not be adjudicated a bankrupt, for the reason that, at the time of granting the order. sufficient grounds did not exist, and no proper and lawful showing was made therefor. (2) vacate the provisional warrant of arrest, on the ground that it did not appear that there was probable cause for believing that McKibben was about to leave the district, or to remove or conceal his property, or to make any fraudulent disposition thereof.

Don. M. Dickinson, for the motion.

H. E. Burtand and D. C. Holbrook, for petitioning creditors.

BROWN, District Judge. The motion to vacate the order to show cause is a very general one, and does not distinctly apprise the petitioning creditors what defects in the proceedings are. relied upon; but, as no objection was taken to it upon this ground, I shall proceed to dispose of the case as made upon the argument.

First. Principal objection to the petition is that it does not appear upon its face that the requisite number of creditors have joined in it. The 39th section of the bankrupt act, as amended January 22, 1874 [18 Stat. 178], provides that any person who has committed an act of bankruptcy, as defined by that section, "shall be adjudged a bankrupt on the petition of one or more of his creditors. who shall constitute one-fourth thereof at least in number, and the aggregate of whose debts, provable under this act, amounts to at least one-third of the debts so provable." "And in computing the number of creditors aforesaid who shall join in such petition, creditors whose respective debts do not exceed two hundred and fifty dollars shall not be reckoned."

The petition in this case alleges that the petitioners "are informed, and believe, that your petitioners constitute one-fourth at least in number, upon the basis of two hundred and fifty dollars and upwards. of the creditors of the said James McKibben, and that the aggregate of their debts, provable under the said acts, amounts to at least one-third of the debts so provable." There are seven petitioners. In the statement of their respective demands. contained in the body of the petition, it appears that the claim of A. C. McGraw & Co., one of the petitioners, amounts to only one hundred and sixty-five dollars; and that of W. D. Robinson & Burtenshaw amounts to but one hundred and three dollars.

The question is then distinctly presented whether the requirement that one-third in amount and one-fourth in number of creditors, having claims of two hundred and fifty dollars and over, should unite in the petition,

---

[1] [Reprinted by permission.]

is met by the allegation of seven petitioners that they constitute the required number, when in fact two of them hold claims of less than two hundred and fifty dollars each.

The legal effect of this allegation is: 1. That the seven petitioners constitute one-quarter in number of all creditors whose debts exceed two hundred and fifty dollars. 2. That the aggregate of their debts amounts to one-third of the aggregate of all claims provable against his estate. Two of these petitioners, however, hold claims of less than two hundred dollars. They are not, then, "of" .the creditors whose debts exceed two hundred and fifty dollars. And the allegation is, therefore, pro tanto, untrue.

Second. But it is claimed that the names and debts of these two may be stricken out as surplusage; that the court is at liberty to look at the affidavits in proof of the act of bankruptcy, accompanying the petition (to which a schedule of creditors is annexed), and the petitions be allowed to stand as those of the five remaining creditors, it appearing by this schedule that these five petitioners do, in fact, constitute the requisite proportion of creditors authorized to institute proceedings. In the first place, however, I think the petition itself ought to make a complete case for adjudication, and that defective allegations cannot be supplied except by amendments made in the usual manner. If a single material allegation may be thus supplied, I see no reason why all may not, and the entire case thus made by a series of affidavits. The forms prescribed by the supreme court contemplate affidavits in proof of the claim of the petitioning creditors, and of the act of bankruptcy; but I do not understand they can be used to establish a case not made by petition. In Re Keeler [Case No. 7,638], it was held that the absence of the allegation as to the number and amount of the creditors in the petition could not be supplied by the admission of the debtor that the requisite number had joined. See, also, In re Scull [Id. 12,568]. In Re California Pac. R. Co. [Id. 2,315], it was held that the court might look at the facts set forth in the petition for an injunction to show that the case made by the petition for adjudication was untrue. But I know of no case where affidavits were admitted to make a new and different case.

Again, I do not see how, by any legal fiction, this petition of seven petitioners can be allowed to stand as that of the five whose debts exceed two hundred and fifty dollars. The allegation that "your petitioners constitute one-fourth at least in number, upon the basis of two hundred and fifty dollars and upwards, of the creditors of said McKibben, and that the aggregate of their debts provable under the said acts amounts to at least one-third of the debts so provable," would have to be interpreted as though it read, "That such of your petitioners as hold claims to the amount of two hundred and fifty dollars constitute one-fourth at least in number,

etc.,"—an allegation to which it is safe to say none of the seven petitioners supposed he was making oath. It was originally filed as the petition of seven, and can no more be treated as the petition of five than of one. If it were true that the five petitioners did not constitute the requisite proportion of creditors, could a prosecution for perjury be sustained against them? An unnecessary allegation may sometimes be treated or stricken out as surplusage, but I have never known of parties to a suit being ejected in this summary manner. Perhaps, if the allegation with regard to the number of creditors were denied by a debtor, and, upon a reference to ascertain whether the requisite proportion had joined, it should appear that a part of the claims were less than two hundred and fifty dollars, yet, if the remainder constituted the requisite proportion, the petition might still be sustained and allowed to stand, as that of the remaining creditors; but I think the petition, as originally filed, should make a prima facie case. I must hold, therefore, that the petition is defective, and makes no case for an adjudication.

Third. Can this defect be remedied by amendment? In the only case I have been able to find, where the power to amend the allegation with regard to the number of creditors was denied (In re· Rosenfield [Id. 12,- 061]), decided by my learned predecessor, the refusal was put upon the ground that the allegation was jurisdictional, and therefore could not be amended. In Re Cornwall [Id. 3,250], the allegation with regard to the claim of the petitioning creditors was treated by Judge Woodruff as jurisdictional, though the power to amend was not discussed. It was also held to be jurisdictional in Re Burch [Id. 2,138], and in Re Skelly [Id. 12,921]. On the other hand, it was expressly held by the district court of Massachusetts in Ex parte Jewett [Id. 7,303], that the allegation in question was not jurisdictional, and the opinion of this court in the Rosenfield Case was criticised at some length.

Jurisdictional allegations are of two classes:

1. Those strictly jurisdictional, and relating to the subject-matter or the parties. The judgment of a court having no jurisdiction of the subject-matter or parties is null and void, and may be impeached in collateral proceedings, and the record of the court showing such jurisdiction may be contradicted by parol evidence. Galpin v. Page, 18 Wall. [85 U. S.] 350; Starbuck v. Murray. 5 Wend. 148; Williamson v. Berry, 8 How. [49 U. S.] 495; Thompson v. Whitman, 18 Wall. [85 U. S.] 457.

2. Allegations of quasi-jurisdictional facts, which must be made and proved, but, when so proved, are res adjudicata, and binding in collateral proceedings; such. for example, as that, in applications for letters of administration, the decedent left no will; in proceedings in rem, under the revenue laws, that the property has been seized by the collector;

and in proceedings to sell real estate for the payment of debts, that the deceased left no sufficient personalty. Examples of these allegations, and of the conclusive character of the judgment rendered under them, are found in the following cases: Hudson v. Guestier, 6 Cranch [10 U. S.] 281; Thompson v. Tolmie, 2 Pet. [27 U. S.] 157; Ex parte Watkins, 3 Pet. [28 U. S.] 193; Grignon's Lessees v. Astor, 2 How. [43 U. S.] 319; U. S. v. Arredondo, 6 Pet. [31 U. S.] 691; Rhode Island v. Massachusetts, 12 Pet. [37 U. S.] 657; Griffith v. Bogert, 18 How. [59 U. S.] 158; Florentine v. Barton, 2 Wall. [69 U. S.] 210; Comstock v. Crawford, 3 Wall. [70 U. S.] 396; Dyckman v. Mayor, 5 N. Y. 434; Jackson v. Crawfords, 12 Wend. 533; Wright v. Douglass, 10 Barb. 97; Fisher v. Bassett, 9 Leigh, 119.

In the recent unreported case of Michaels v. Post [21 Wall. (88 U. S.) 398], in the supreme court of the United States, the allegation with regard to the debt of the petitioning creditor is treated as jurisdictional, and the judgment of the district court as binding in an action by the assignee. In Betts v. Bagley, 12 Pick. 572, a similar allegation under the insolvent law of New York was treated as jurisdictional. The court remarks "that the magistrate before whom insolvent proceedings are instituted has jurisdiction of the person, where it is shown that the party petitioning as an insolvent is an inhabitant of the county, and of the subject-matter, where the proceedings are brought before him by a petition purporting to be a petition by the insolvent, in conjunction with persons holding two-thirds of all the debts due from the insolvent to persons residing within the United States." I think, therefore, that the allegation in question is a quasi-jurisdictional one, and falls within the second category above mentioned. Does it therefore follow that it is not amendable? It was so held, or rather assumed, by my learned predecessor in Re Rosenfield, above cited; but I think the weight of authority is decidedly the other way. It was held amendable in Ex parte Jewett [supra], and in Re California Pac. R. Co. [Case No. 2,315]. In Re Burch, already cited, the learned judge of the Western district also treated it as amendable. I find no such general doctrine as assumed in the Rosenfield Case, that a jurisdictional allegation, even in special proceedings, cannot be amended. In Conelly v. Taylor, 2 Pet. [27 U. S.] 556, and in Jackson v. Ashton, 10 Pet. [35 U. S.] 480, the allegation of citizenship necessary to be made to give jurisdiction to the federal court was held to be amendable. See, also, Greeley v. Smith [Case No. 5,747]. In attachment proceedings the rule is different in different states. Under the statutes of Alabama and Georgia they are held not amendable (see Hall v. Brazleton, 40 Ala. 406; Cohen v. Manco, 28 Ga. 27), while in Iowa, Mississippi, and New York they are treated as amendable (Bunn v. Pritchard, 6 Iowa, 56; Langworthy v. Waters, 11 Iowa, 432; Johnson v. Tuggle, 27 Miss. 836; Lawton v. Keil, 61 Barb. 558).

The section of the act in question provides that "if the allegation as to the number or amount of petitioning creditors be denied, and it shall appear that the requisite number have not petitioned, the court may extend the time within which the other creditors may join in the petition." Under this provision, amendments of the petition have been permitted in a large number of cases.

Petitions filed between December 1, 1873, and June 22, 1874, are also permitted to be amended by this provision. As congress has expressly allowed amendments of all petitions filed between these dates, and of all those where the allegation in question is untrue in fact, I think that courts ought to be equally liberal in allowing them where the allegation is defective in law. While upon ordinary questions, as they arise, I propose to follow the prior decisions of this court without comment, the practice of altogether disallowing amendments in cases of this character would frequently be so disastrous to creditors, and work such obvious injustice, that I feel constrained to take the responsibility of changing it, and of permitting amendments where the facts of the case would seem to justify it. It appears from one of the affidavits in support of the petition (and I think the court may look at the affidavits for this purpose, although not for the purpose of establishing a case not made by the petition) that the five creditors whose claims exceed two hundred and fifty dollars each do constitute the requisite number and amount, and I shall therefore permit the petition to be amended in this regard.

Fourth. Further objection is made that the acts of bankruptcy charged in the petition are not supported by the depositions. Twelve affidavits are filed in support of the petition, and of the application for a provisional warrant. One of those is sworn to before a circuit court commissioner, and is conceded to be inadmissible. Nine are verified before notaries public, and, I think, are also inadmissible. By the act of July 29, 1854 [10 Stat. 315], notaries public were authorized to "take depositions, and do such other acts in relation to evidence to be used in the courts of the United States, in the same manner and with the same effect as commissioners to take acknowledgments of bail and affidavits might lawfully take or do." In the case of Blake Crusher Co. v. Ward [Case No. 1,505], decided before the publication of the Revised Statutes, Judge Longyear held that the taking of verifications to bills and answers, and of affidavits in support of motions and injunctions, were "acts in relation to evidence" within the meaning of the above provision, and properly done before notaries. The object of this act, however, was primarily, to amend the 30th section of the judiciary act of 1789 [1 Stat. 88], in relation to dep-

ositions de bene esse, and to extend the power of taking such depositions to notaries as well as to judges, clerks, and commissioners. The revisors of the statutes so treat it, and in section 863 they simply inserted the words "notary public" as one of the officers before whom depositions may be taken, and, apparently gave them no power to do "such other acts in relation to evidence" as was held, in the case above cited, to authorize them to take affidavits. Section 1778 provides that in all cases in which oaths or acknowledgments may be taken before any justice of the peace, they may also be taken before a notary public; but I find no provision by which oaths in general may be taken before justices. They are given power to take complaints for warrants of arrest, and also in certain cases under the merchants' seaman's act, and perhaps in some other minor matters; but I know of no act giving them a general power to take affidavits. I think, therefore, that the nine affidavits in question cannot be read.

The acts of bankruptcy set forth in the petition are: (1) A fraudulent chattel mortgage on McKibben's stock of goods, to secure an alleged debt of three thousand dollars, made with intent to hinder, delay and defraud creditors. (2) That McKibben, being insolvent, assigned, transferred, and disposed of his goods and other property, with intent to hinder, delay, and defraud his creditors, and to defeat and delay the operation of the act. (3) A fraudulent stoppage of payment of commercial paper.

As there is no evidence in the depositions to sustain the last two counts, the only question is whether sufficient appears to show that McKibben made the mortgage specified in the first count with intent to defraud his creditors. The intent need only exist in the mind of McKibben (In re Drummond [Case No. 4,093]), and is determined by looking at what he has said and done, and the effect thereof (Ecfort v. Greeley [Id. 4,260]). The mortgage was made to Hiram Harrington, September 29, 1874, and purported to cover his entire stock of goods as well as the safe contained in his store, and to secure the payment of three thousand dollars, on or before January 29, 1875, with interest at ten per cent. It was filed in the township clerk's office, October 3. The facts set forth in the depositions are substantially as follows: that McKibben had been engaged in business about two years, during the first year as a partner of Harrington, and after that alone, and as successor of the firm of Harrington & McKibben. That on September 25, 1874, four days before the execution of the mortgage, one Rathbun visited St. Louis, where McKibben did business, and took from him an order for dry goods to the amount of two thousand four hundred dollars. Before sending the order to his principals, and on September 29, the day the mortgage was executed, he took from McKibben the following statement

of his property: Three lots and houses in St. Louis, four thousand dollars; forty-four lots in wife's name, four thousand five hundred dollars; stock on hand, six thousand dollars; outstanding debts, twelve hundred dollars: total, fifteen thousand seven hundred dollars. Liabilities: Hiram Harrington's mortgage on three lots and houses, two thousand four hundred dollars; mortgage on forty-four lots, one thousand dollars; unsecured claims, two thousand three hundred dollars: total, five thousand seven hundred dollars. Relying upon the truth of this statement, Rathbun forwarded the order for the bill of goods, and also introduced McKibben to several other business houses in Detroit, of whom and of other Eastern creditors before his failure he purchased goods to the amount of about seven thousand five hundred dollars. That on the 18th of February, 1875, learning that McKibben had failed, Rathbun again went to St. Louis, saw McKibben, who admitted giving the chattel mortgage to Harrington, when his attention was called to the apparent loss or deficiency, it having been ascertained by an inventory made upon the foreclosure of the chattel mortgage, that the stock was valued at about two thousand nine hundred dollars. McKibben claimed that the value placed on his stock in September must have been too high, and when reminded that if his stock then and now was about the same, he had nevertheless purchased two thousand five hundred dollars worth more of goods than he had paid of debts, and, asked to account for those two thousand five hundred dollars worth of goods, said that he was unable to do so. Admitted sending off goods to the amount of five or six hundred dollars to other and distant places, but claimed they were old, shop-worn, and unsalable; that he had nothing with which to pay his debts; that when asked how much he valued his lots at, replied, about two thousand six hundred dollars, and that his wife's forty-four lots were worth about two thousand five hundred dollars. To Rathbun's counsel, who accompanied him to St. Louis, McKibben stated that he could not tell how much he owed Harrington, and had no means of knowing without consulting him; that he had paid some of his notes to Harrington, and given others before and after the date of said chattel mortgage. That McKibben refused to show him his books of account; that on asking him who his attorney was, he referred him to one Wright; that he refused to go in with him to see his attorney; that Wright also purported to act as the attorney of Harrington, and that both McKibben and Wright refused to meet together with Rathbun's counsel and discuss the matter at all.

There are many other facts set forth in these affidavits with regard to the removal of valuable goods to a large amount, but as they are sworn to only upon information and belief, it is at least doubtful whether they can be considered upon this motion; sufficient, however, appears to make out a prima facie

case of conveyance with intent to defraud creditors, and to justify an order to show cause.

First. The mortgage covered all the stock of the debtor.

Second. If there was any consideration at all for it other than that already secured by the real estate mortgage, it seems to have been for a precedent debt of two thousand dollars. contracted about a year before, when McKibbin bought out the interest of Harrington in the establishment. Harrington up to that time had rested content with personal security.

Three. It was made when McKibben was heavily indebted.

Fourth. On the day it was made, McKibben made a statement of his liabilities, in which the only claim of Harrington was the mortgage of two thousand four hundred dollars, secured on his real estate, no mention was made of the debt secured by this mortgage, if any such existed, nor was anything said about a mortgage being given; he stated the value of his real estate at four thousand dollars, when it was worth, as he afterwards admitted. but two thousand six hundred dollars. The value of his wife's property, stated upon that day at four thousand five hundred dollars, he afterwards admitted was worth but two thousand five hundred dollars.

Fifth. Notwithstanding that, between the giving of the chattel mortgage and his failure, he had purchased goods to the amount of two thousand five hundred dollars more than the amount of debts he had paid, the stock inventoried under the chattel mortgage but two thousand nine hundred dollars, when he had stated it in September at six thousand dollars.

Sixth. He refused to show his books of account, was evidently ignorant of the amount he owed Harrington, declined any explanations, and even refused to confer with his creditors in presence of his counsel. I think these facts are sufficient to justify the issuing of an order to show cause. Is there sufficient to justify a provisional warrant for the debtor's arrest and the seizure of his property? The 40th section of the bankrupt law authorizes a provisional warrant, if it shall appear that there is probable cause for believing the debtor is about to leave the district, or to remove or conceal his goods and chattels or his evidence of property, or make any fraudulent conveyance or disposition thereof. No separate petition for a provisional warrant is presented, but the prayer of the petition for the order to show cause, also asks the issuing of a provisional warrant. It was granted upon the prayer of this petition and upon the affidavits already referred to. Where the facts set forth in the affidavits justify the issuing of a provisional warrant,

I should be unwilling to vacate it, simply upon the ground that the affidavits were not in the form of a petition, especially where a warrant was prayed in the original petition. See Morgan v. Quackenbush, 22 Barb. 73. Better practice, however, is to file a separate petition, supported by affidavits of persons having knowledge of the facts where the same are not stated in the petition of the petitioner's own knowledge. I think the provisional warrant should not issue except where all material facts are stated upon personal knowledge. In this case, nothing appears tending to show a removal or concealment of property, or fraudulent disposition thereof, except his admission that he had sent off to other places, not to exceed five or six hundred dollars worth of goods, and that they were old, shop-worn, and unsalable. It is true that deponents swear that they are informed that valuable goods to a much larger amount were sent away and disposed of at various places, but this fact is not established by the personal knowledge of any one, and I think sufficient did not appear to justify the issuing of a provisional warrant, the only object of which is to obtain immediate possession of the goods and person of the debtor, pending the appointment of the assignee. As it seems highly probable, however, from the statements of counsel, as to the contents of the inadmissible affidavits, that sufficient cause does, in fact, exist, for the issuing of a provisional warrant, leave will be given to make another application.

Seventh. The only remaining objection to the proceedings is. that the commissioner who took the depositions in proof of debts, failed to sign the jurat to the deposition of J. H. Bratshaw. It seems that all parties appeared before Mr. Graves, United States commissioner, on the 25th day of February, and made oath to the petition and to the depositions in proof of their respective claims, but that he accidentally omitted to sign the jurat to Mr. Bratshaw's deposition. As the omission is purely a clerical one, I think it may be supplied. If the commissioner distinctly recollects the fact of Mr. Bratshaw signing and verifying the deposition in his presence, he may sign his name to it as it stands, otherwise the party may be re-sworn, and the deposition filed nunc pro tunc.

It is therefore ordered that the petition be dismissed unless the same be amended within ten days; that the respondent be discharged from arrest, and the property seized by the marshal under the provisional warrant be delivered up, but without prejudice to a new application.